THE TOWN OF BRUCE

*v.*

T. LYLE DICKEY.

*Filed at Ottawa March 27, 1886.*

116  527
164  232

116  527
182  123

116  527
   87a 611

116    527
196    ²586

116    527
209    170

1. SUPERVISOR OF TOWN—*power to employ counsel to defend suit against his town.* Suit was brought against a town in February, 1875, in the United States Court, upon coupons attached to bonds of the town, the validity of which was disputed. In the same month the supervisor of the town employed counsel to defend the suit. Upon the question as to the power of the supervisor to enter into the contract of retainer in behalf of the town, it was considered that under existing legislation the authority of the supervisor in that regard might well be implied, and especially in this case, where the contract had been fully executed, the services all performed, their benefit enjoyed, and acquiescence by the town in the contract of employment during the long period of seven years of the litigation.

2. RATIFICATION—*by municipal corporation.* A municipal corporation may ratify the unauthorized contracts of its agents or officers which are within its corporate powers. Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals.

3. JUDGES ACTING AS ATTORNEYS AT LAW—*constitution prohibiting performance of other than judicial duties, construed.* The constitutional provision that "no judge of the Supreme or circuit court shall perform any other than judicial duties to which may belong any emoluments," is intended to prohibit the performance of other *official* duties, or duties imposed by law. There is no constitutional prohibition against a judge of the Supreme or circuit court practicing law for a compensation.

4. ATTORNEY AT LAW—FEES FOR LEGAL SERVICES—*where there is a retainer in several cases, one of which is to be tried as a test case.* Where an attorney at law employed to defend in two or more suits involving the same questions, makes an agreement with plaintiff's counsel whereby only one suit is to be tried, and the other is to abide its result, and the test case is tried alone, and decided in favor of the defence, whereupon the others are dismissed, the services of the attorney in the test case may be considered as rendered also in the other or others, and he may recover the reasonable value of his services in the case not tried in fact; and the fact that he is paid for his services in the test case will not at all impair his right of recovery in respect to the cases not actually tried.

5. An attorney employed to defend two suits against a town, involving the validity of corporate bonds and coupons thereto attached, no fee being

agreed upon, procured a stipulation that such suits should abide the result of two other suits involving the same questions, and defeated the actions by a decision in his favor in the test cases. In an action by him against the town to recover for his services, the town offered evidence that the services in the test cases were rendered under prior special contracts, and to show how much money had been paid to the plaintiff in those suits, which the court excluded: *Held,* that the evidence was properly excluded.

6. The defendant town, in such a case, might properly inquire what would be a reasonable compensation to the plaintiff in all the cases taken together, or what would be a reasonable compensation to be allowed in the cases against the town, in view of their connection with the other cases, and of the plaintiff's employment in them all; and this was as far as the defendant might go, except if it was shown what would have been a reasonable compensation in all the cases, it might then be proper to show what he had received in any of the cases.

7. SAME—*taking into consideration the whole amount to be affected by the litigation.* In a suit against a town by an attorney, to recover a fee for defending two suits brought upon coupons attached to town bonds, the validity of which was questioned, it was held proper to allow witnesses and the jury to take into consideration the whole amount of bonds issued by the town, and the interest thereon, in testifying and determining the reasonableness of the fee charged.

8. SAME—*evidence as to limitation of amount of fee.* If an attorney, in a negotiation for his retainer to defend certain suits against a town, tells the supervisor that he can not fix any definite fee for his services, but that he thinks it will not exceed $300, whereupon he is retained, and never afterward gives any notice that he will have to charge a greater fee than such sum, the defendant, in an action to recover a much larger fee, will have the right to base instructions upon such statement of the plaintiff; and it will be error to modify or limit such instructions, so as to deprive them of their true and proper force. In such case, an instruction based upon the idea that a fee was fixed, is erroneous, for want of evidence upon which to base it, the evidence being only that it was limited.

9. SAME—*evidence as to the rightfulness of the defence interposed, as affecting the question of attorney's fee.* In an action by an attorney to recover a fee for defending two suits against the defendant, a town, on the question of the reasonableness of the fee charged, a witness in his deposition testified that the amounts in the cases were large, the question of law intricate, if not new, and required a high order of legal attainment; that the defence, in the language of Judge D., "was the most inequitable ever interposed in a court of justice;" that the result was the successful repudiation of a just debt of the town, and that he thought ten per cent of the amount thus repudiated was a fair compensation for the plaintiff, "since there must have been in that service a considerable strain upon his conscience:" *Held,* that this evidence should have been excluded as wholly incompetent and improper.

APPEAL from the Circuit Court of La Salle county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. MAYO & WIDMER, for the appellant:

The supervisor, without authority from the electors of his town, had no authority by law to employ counsel to defend the suits. Section 3, article 4, of the Township Organization law of 1874, declares that "the electors present at the annual town meeting shall have power * * * to provide for the institution, defence," etc., of suits, etc. The vesting of this power in one body, by implication excludes all other bodies or functionaries. *Gaddis* v. *Richland County*, 92 Ill. 119; *Town of Mt. Vernon* v. *Patton*, 94 id. 65.

The greater part of the services for which a recovery is sought, was performed after Judge Dickey was elected judge of the Supreme Court. The constitutional prohibition (art. 6, sec. 16,) against the performance of any other than judicial duties, will prevent a recovery. *Village of Dwight* v. *Palmer*, 74 Ill. 275; *Health Association Co.* v. *Rosenthal*, 55 id. 85; *Railroad Co.* v. *Larned*, 26 id. 218; 2 Kent's Com. (11th ed.) 466; Chitty on Contracts, (8th Am. ed.) 569.

The town could not be liable for services performed in the other cases. There was nothing done in them that would not have been done if the plaintiff had not been retained for the defendant town.

As to the measure of compensation, and proof of the value of the services, see *Haish* v. *Payson*, 107 Ill. 365; *Eggleston* v. *Boardman*, 37 Mich. 18; *Robbins* v. *Harvey*, 5 Conn. 341.

It can not be said the question of the existence of a special contract limiting the amount of plaintiff's compensation, was fairly submitted to the jury. The error in the instructions in this respect was not cured by those given for the defendant. *Railroad Co.* v. *Rector*, 104 Ill. 296; *Railroad Co.* v. *Moffit*, 67 id. 431; *Pennsylvania Co.* v. *Stoelke*, 104 id. 201; *Linen Co.* v. *Hough*, 91 id. 63; *Railroad Co.* v. *Dimmick*, 96 id. 42;

*Moore* v. *Wright,* 90 id. 470; *Cushman* v. *Cogswell,* 86 id. 62; *Evans* v. *George,* 80 id. 51; *Provision Co.* v. *Tilton,* 87 id. 547.

Messrs. Duncan & O'Connor, Messrs. Monroe & Tewkesbury, and Mr. J. W. Duncan, for the appellee:

The question of the authority of the supervisor to employ the plaintiff, is raised in this court for the first time. The objection comes too late. But the supervisor had authority by law to bind his town in that respect. *Cooper* v. *Delavan,* 61 Ill. 96.

A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the corporate powers. Dillon on Mun. Corp. sec. 385.

They are liable upon their implied contracts. *Gas Co.* v. *San Francisco,* 9 Cal. 453; *People* v. *Swift,* 31 id. 26; *Howe* v. *Keller,* 27 Conn. 538; *Peterson* v. *Mayor,* 17 N. Y. 449.

The clause of the constitution referred to does not prohibit a judge of the circuit or Supreme court from transacting other than judicial business, and receiving compensation therefor. This provision means that he shall not perform official duties, other than judicial, to which emoluments are attached. Bouvier's Law Dic. word "Emolument;" Const. 1870, sec. 17, art. 5; sec. 25, art. 5; sec. 24, art. 25; Rev. Stat. sec. 10, chap. 13; *National Bank* v. *Mathews,* 8 Otto, 621; *Hall* v. *Hamilton,* 74 Ill. 442.

The question whether appellant shall be required to pay appellee for services performed in the test cases, does not arise under the facts of this case.

The measure of compensation adopted was proper and right.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action brought by T. Lyle Dickey, against the town of Bruce, to recover for professional services as an attorney at law.

The leading facts appearing are, that about the year 1870, various towns along the line of the Ottawa, Oswego and Fox River Valley railroad, and the county of Kendall, had issued their bonds to aid in the construction of that road, aggregating some $400,000, the bonds purporting to be issued under the act of the legislature of February 18, 1857. In 1871, and afterward, the plaintiff in this suit became employed as an attorney in various suits to defeat the collection of portions of such bonds. The first suit was by Lynch and other tax-payers of the town of Ottawa, against Ryan, town collector, to enjoin the collection of taxes levied to pay interest on the bonds which that town had issued, which finally resulted in a decision of this court, in November, 1873, holding the bonds invalid, for the reason that the act of February 18, 1857, was not passed by the Senate, in conformity with the constitution. (See *Ryan* v. *Lynch*, 68 Ill. 160.) A like decision was rendered in *Miller* v. *Goodwin*, 70 id. 659, in January, 1875. Two other of such suits were brought in the United States Circuit Court for the Northern District of Illinois, one by Perkins, against the town of South Ottawa, and the other by Post, against the county of Kendall, to recover on the bonds issued by such town and county, respectively. In these two cases the United States Circuit Court held the bonds valid, and the cases were taken by writ of error to the Supreme Court of the United States, and in February, 1875, were then pending there, the records having been filed in September of 1874. The town of Bruce, the defendant here, in 1870 issued thirteen of such bonds, for $1000 each, due in 1890, with coupons attached, for $100 each, for the payment of annual interest at ten per cent. In December, 1874, one Marcey brought an action in said United States Circuit Court against the town of Bruce, to recover on six of these coupons. In February, 1875, William H. Pilcher, then supervisor of the town of Bruce, went to Ottawa to arrange with the plaintiff here to defend that suit, and did so. Thereupon plaintiff,

in March, 1875, filed in the Marcey suit, pleas copied from the same pleas in the Perkins case, above mentioned, except as to names of parties. At this time plaintiff was defending, in the United States Circuit Court, quite a number of suits against towns other than Ottawa and South Ottawa, in which the amounts involved would not permit an appeal to the United States Supreme Court, and in which he prevailed on the United States Circuit Court to allow judgments to be taken against his clients, conditioned, however, to abide the result of the decision of the United States Supreme Court in the Perkins case, then pending there. Soon after filing the pleas in this Marcey suit against the town of Bruce, such a judgment was rendered in that suit. In the spring of 1877 the Perkins judgment was reversed by the United States Supreme Court, and the case was remanded to the United States Circuit Court for a new trial, and thereupon the judgment in the Marcey suit was, on motion of plaintiff here, set aside, and an arrangement was made between him and the attorney for Marcey, that the Marcey suit should stand without trial, and should abide the result of the case of Amoskeag Bank against Ottawa, a suit brought upon such bonds issued by that town, and then pending in the United States Circuit Court. Another suit was brought by one Larned, against the town of Bruce, in September, 1881, on fourteen coupons cut from these bonds, and plaintiff here procured a like arrangement to be made, that that suit should abide the determination of the Amoskeag bank case. In the Amoskeag bank case the judgment was, in the United States Circuit Court, for the defendant, against the validity of the bonds, and in May, 1882, that judgment was affirmed by the Supreme Court of the United States. Afterwards, at the instance of plaintiff, these suits of Marcey and Larned against the town of Bruce, in the United States Circuit Court, were dismissed.

The jury rendered a verdict in the present case, of $2000 in favor of the plaintiff, on which the court entered judgment,

after overruling a motion for a new trial, and the defendant took this appeal.

There are various questions raised upon this record. The alleged employment of the plaintiff was by the supervisor of the town, without any authority from the electors of the town, and it is insisted the supervisor had no power to make such employment so as to bind the town and make it liable to pay for the services rendered.

The provision of the Township Organization law is, (sec. 3, art. 4, chap. 139, Rev. Stat. 1874, p. 1072:) "The electors present at the annual town meetings shall have power * * * to provide for the institution, defence or disposition of suits at law or in equity, in all controversies between the town and any other town, or any individual or corporation, in which the town is interested." There is certainly no express language anywhere authorizing the supervisor to employ counsel. Section 4, article 27, of the Township Organization law of 1861, contained this provision: "And whenever any suit or legal proceeding shall be commenced, (against the town) it shall be the duty of the supervisor to attend to the defence thereof, and lay before the electors of the town, at the first town meeting, a full statement of such suit or proceeding, for their direction in regard to the defence thereof."

In *Cooper* v. *Delavan*, 61 Ill. 96, this court held, under that act, that authority in the supervisor to employ counsel was manifestly implied from the provision making it his duty to attend to the defence of suits against the town. But the act of 1861, relating to township organization, was expressly repealed in 1874, and in revising the law on that subject the legislature omitted that provision; and it is argued that such omission denotes the intention of the legislature to withhold from the supervisor the authority to employ counsel, which this court had held was implied from the duty imposed upon the supervisor to attend to the defence of suits against the town. We can not attach such significance to the omitting

of that provision from the revised act. In the case referred to, after remarking upon the fact that cases might occur requiring immediate action in the bringing or defending of suits, and where great injury might result if the supervisor could not act and employ counsel until there had been held a town meeting to give him authority, the court observed: "These considerations, independent of the imposition of the duty of attending to the defence by the supervisor, would warrant the inference that the supervisor might employ counsel, from the mere fact that process is served on him. As the act of 1861 did, so also does the act of 1874, provide for service of process upon the supervisor in a suit against the town." Although the above observation was not necessary to the decision of that case, we assent to and adopt it, and especially in this case, where the contract has been fully executed, the services all performed, their benefit enjoyed, and acquiescence by the town in the contract of employment during the long period of seven years of the litigation. "A municipal corporation may ratify the unauthorized contracts of its agents or officers which are within the corporate powers, but not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals." (1 Dillon on Mun. Corp, sec. 385.) We hold the town bound by the contract of employment made by the supervisor.

The plaintiff was elected a judge of the Supreme Court of Illinois in December, 1875, and had ever since, to the time of the trial, held that office. The greater part of the services for which he recovered were rendered after he became such judge. The point is made that a judge of the Supreme Court is prohibited by the constitution of this State from practicing law for compensation. In support of the position is cited section 16, of article 6, of the constitution of 1870, which, after fixing the salaries of the judges of the Supreme and

circuit courts, reads as follows: "And from and after the adoption of this constitution, no judge of the Supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties to which may belong any emoluments." The words that "no judge of the Supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever," are not depended upon for the alleged inhibition, as manifestly they should not be; but it is the last clause, "nor perform any other than judicial duties to which may belong any emoluments," which is relied upon as containing the prohibition. These words naturally refer to official services, or to services required by law to be done, and not to work done by employment under a private contract. It is the performance of *duties* which is prohibited,—a term which is suggestive of office. It is duties to which belong *emoluments*. The word "emoluments" is peculiarly appropriate to office, denoting, in its most ordinary signification, the profit "which is annexed to the possession of office, as salary, fees and perquisites." And it is emoluments which *belong* to the performance of duties,—the word "belong" implying fixed, prescribed by some regulation,—as are the emoluments attached to office, and not something contracted to be paid by agreement between private parties. This analysis of the language of this clause shows its fitness as prohibiting the performance of any official duties, or duties imposed by law, to which any emoluments are attached, and that it is quite inappropriate language in which to couch a prohibition to conduct a law suit, or to perform any other work than judicial duties, under a private contract for a compensation to be paid. Had it been the intention to prohibit judges from doing any other work for pay, it could easily have been so said in plain terms, and we can not conceive that the cumbersome and inapt phraseology in question would have been used to express that purpose.

It is argued that an attorney at law is an *officer* of the court, that he holds an *office,* and that when he accepts a retainer from a party, he is under a legal obligation to do what are *duties* growing out of the contract entered into. To do that which is required to be done by the legal obligation of a contract entered into, may, in a sense, be called a duty, but it does not come within the class of duties contemplated by this constitutional prohibition. Neither is an attorney to be regarded as holding an office, within the purview of that prohibition. To say that an attorney at law, in the doing of any matter of legal business under private employment for a compensation agreed to be paid, is performing the duties of an office, or is performing *duties* to which *belong emoluments,* and so is brought within reach of this prohibition, is a forced construction. It is not according to the natural and obvious import of the language used.

As throwing light upon the meaning of this section 16 of the constitution of 1870, it is proper to look at the preceding constitution of 1848, and the practice thereunder. The constitution of 1848 fixed the salaries of the circuit judges at $1000 each, "and no more;" those of the Supreme judges at $1200 per year, "and no more." That constitution also provided that judges of circuit and Supreme courts should not be "eligible to any other office or public trust of profit in this State or the United States during the term for which they are elected, nor for one year thereafter." However it might have been at first, afterwards, and in a changed condition of things, these salaries became a markedly inadequate remuneration, and the legislature were studious in devices to give the judges something additional in the way of compensation. In some cases docket fees were given to circuit judges. In 1869 the legislature authorized the payment "to each of the justices of the Supreme Court of this State, in addition to the amount heretofore allowed them, as clerk hire, the sum of $1200 per annum." (Laws 1869, p. 46.) At the same ses-

sion an act was passed required requiring the circuit judges to note and report to the Supreme Court imperfections and omissions in the laws, and to suggest amendments, and that each judge should receive $1000 per year for such services. (Laws 1869, pp. 49, 50.) In view of all this, said section 16 was inserted in the constitution of 1870. The provision of the constitution of 1848, that the judges of the Supreme and circuit courts should not be eligible to any other office or public trust of profit, was omitted from the constitution of 1870, and in place thereof we have this section 16. It may reasonably be supposed that it was in view of and to prevent the practice which had prevailed under the constitution of 1848, to impose other duties and give additional compensation to judges of the Supreme and circuit courts, and to supply the place of the provision of that constitution making such judges ineligible, during their term, to any other office or public trust of profit, that the section in question of the constitution of 1870 was adopted, that "no judge of the Supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial *duties* to which may *belong* any *emoluments.*" The occasion for its adoption suggests, as the natural reading of the language used is, that the prohibition was directed against the performance of other official duties, or duties imposed by law, and not against the performance of any other labor in no way connected with duties of that character. Propriety may forbid a judge of the Supreme or circuit court from practicing law, as not being congruous with the judicial office, but we find no constitutional prohibition against it.

Evidence was given, against the objection of defendant, of the services rendered by the plaintiff in the so-called "test cases" of *Perkins* v. *South Ottawa* and *Amoskeag Bank* v. *Ottawa*, and complaint is made that under the rulings of the court below the defendant was held liable to pay for services performed in those cases. The question was raised in vari-

ous forms, of which one was the giving of the third instruction for the plaintiff, that if, in rendering the services he did for the defendant, the plaintiff, by the same acts, was rendering services for other towns or municipalities which were interested in the same questions, and had also employed him and were benefited by the same services, and have paid or have become liable to pay him a compensation therefor, such fact does not at all impair the right of the plaintiff to recover from the town of Bruce a reasonable compensation for the services rendered for the town of Bruce, whether the said services were rendered in suits brought against the town of Bruce, or in suits brought against other of such towns. As has been observed, the two suits against the town of Bruce were, by agreement between counsel, made to abide the decisions in the two above named test cases, all the bonds in the several cases having been issued under the supposed act of February 18, 1857, and there being but one and the same question involved in them all,—whether the act ever passed the Senate and became a law. The services were rendered mostly in the two test cases, there being no other services performed in the suits against the town of Bruce distinctively, than to file a copy of the two pleas which were in the test cases, to make the agreement that such suits should abide the result of the test cases, and to see to the order of dismissal of the cases. The plaintiff was attorney for the defendants in all the cases. We think, in the case of such an agreement that one case shall stand without trial and abide the determination of another case to be tried, where it is the same question to be tried and the same attorney is engaged in the defence of each case, that his services in the case which is tried may be considered as rendered also in the other case. And we are not prepared to say the rulings of the court in this case upon this subject were not correct.

There was evidence offered by the defendant, which the court excluded, to show that the services in the other cases

were rendered under prior special contracts, and to show what amounts of money had been paid to plaintiff in those cases. It is insisted there was error in this exclusion of testimony—that the offered evidence was competent as bearing upon the question of what would be a reasonable compensation to allow in the present case. A majority of the court think the evidence was rightly excluded; that as far as it was admissible to go in this respect, was to inquire as to what would be a reasonable compensation to the plaintiff in all the cases taken together, or what would be a reasonable compensation to be allowed in the present case in view of its connection with the other cases, and of the plaintiff's employment in them all. In case of there being evidence of what would be a reasonable compensation in all the cases, taken together, in which plaintiff was employed, then it might be proper to show what he had received in any of the cases.

On behalf of the defendant, the court below gave the following instructions to the jury:

"10. If the jury believe, from the evidence, that at the time the plaintiff, Dickey, was employed by Pilcher, the supervisor of the town of Bruce, to attend to the Marcey suit, said Pilcher asked said Dickey what the expense of his, said Dickey's, services in said suit would be, and that said Dickey told said Pilcher that he thought said expenses would not be more than $300, and that said Dickey made such statement with the purpose and the intention that said Pilcher should rely upon said statement, and employ him, said Dickey, in reliance thereupon, that said Pilcher did rely upon said statement, and employ said Dickey in reliance thereupon, then, and in such case, said Dickey can not recover more than said sum of $300 for his services in said suit.

"10½. If the jury believe, from the evidence, that the conversation between the plaintiff, Dickey, and Pilcher, the supervisor of the town of Bruce, at the time of the employ-

ment of said Dickey, was of such a character that what was said by said Dickey was calculated and intended by said Dickey to assure said Pilcher that the charges or compensation of said Dickey for the services for which he was then employed would not exceed $300, and that said Pilcher relied upon such assurance, and in reliance thereon employed said Dickey, then and in such case the jury must find that it was agreed between said Dickey and said Pilcher that the compensation of said Dickey for the services for which he was then employed should not exceed $300, and the compensation of said Dickey for such services can not be estimated by the jury at a greater amount than $300."

And, at the request of the plaintiff, the following qualification of the instructions was given to the jury: "As a qualification to instructions No. 10 and No. 10½, the jury are instructed that if they believe, from the evidence, that in the conversation referred to in these two instructions, Judge Dickey did not contract to limit his charges to any given amount, but merely expressed an opinion as to what the limit would be, and if the jury further believe, from the evidence, that the work that afterwards became necessary was very much greater than was expected, in such case such condition ought not to prevent the plaintiff from recovering the full value of his services rendered for the town of Bruce, if employed to render the same." To the giving of which qualification the defendant, by its counsel, then and there excepted.

As bearing upon the question of employment, there was the following testimony of the witness Pilcher, supervisor of the town of Bruce.

"I came over to make an arrangement with the judge to defend, in pursuance of a meeting that I called out there. I didn't feel like I was going out of office, and I called together a few of the leading citizens, and we held a consultation, and they thought it was better for me to go and employ Judge

Dickey, in case his fees would be reasonable. I came for that purpose and talked with him, and finally gave him the case.

Q. "What was said upon the subject of fees, if anything, at that time?

A. "I asked him particularly what it would cost us. He didn't seem to know just exactly. He said he can could hardly state, from the fact that he didn't know just how much labor would be attached to it, but said it might be $100, and might be more. I told him I wished to report back to the meeting there, and I would like to know about what the expense would cost. He told me that he thought it would not exceed $300.

Q. "In view of that statement did you employ him or not?

A. "I did so; yes, sir."

And as to an explanation he asked to make: "The explanation I want to make is, why I remember that so distinctly was because that was my special errand over here to know how much it would cost, and I reported back not to exceed $300."

If the instructions Nos. 10 and 10½ were properly given on behalf of the defendant, as we incline to think they were, at least in the absence of any notification that the charge would be more than $300, or that the services would be greater than expected, then the qualification of them asked and given for the plaintiff was erroneous, as it deprived the instructions of their true and proper force, and was calculated to mislead the jury.

In this connection we remark that the second instruction given for the plaintiff, that he was "entitled to recover what his services rendered are reasonably worth; unless a special contract was made fixing the amount to be paid therefor," was objectionable in the use of the word "fixing," there being no evidence in the case tending to show that the amount to be paid was fixed, but only that it was limited not to exceed a certain sum. We are of opinion the matter as to limita-

tion of the charge for services was not fairly submitted to the jury by the instructions.

Exception was taken by the defendant to the refusal of the court to exclude the answer to the eighth interrogatory in the deposition of the witness Littler, which contained the following: "The amounts in these cases were large. The question of law was intricate, if not new, and required a high order of legal attainment to efficiently represent the client. The defence interposed, in the language of Judge Drummond, in delivering his opinion on the first demurrer, 'was the most inequitable ever interposed in a court of justice.' The result in the cases was the successful repudiation of a debt justly owed by these towns, and accordingly I think ten per cent of the amount thus successfully repudiated a fair compensation for Judge Dickey, since there must have been in that service a considerable strain upon his conscience." It is surprising that a court should have given its deliberate sanction to the introduction of such matter in evidence before a jury. It should have been excluded.

In estimating the value of plaintiff's services, witnesses for the plaintiff were allowed to take into consideration the whole amount of the bonds issued by the town of Bruce, and the jury were instructed that it was proper for them, in determining the amount to which plaintiff was entitled, to take into consideration the whole amount of such bonds, and the amount of interest which had accumulated upon them, and it is insisted there was error in this. Although there was directly involved in the suits only the six and fourteen coupons, of $100 each, sued upon, the result of the litigation was to establish that there was no right of recovery upon any of the bonds issued by the town, and the whole series of such bonds was really involved, and the ruling of the court amounted to no more, in substance, than allowing the amount involved to be taken into consideration, which was proper. This is quite different from the case of *Haish* v. *Payson*, 107 Ill. 365, re-

ferred to, where it was held that remote and speculative benefits which might follow from the result of a litigation, were not a proper subject for consideration.

For the errors which have been indicated, the judgment will be reversed, and the cause remanded.

*Judgment reversed.*