Elmer J. Schnackenberg, Appellee, v. Roland Towle, Appellant.

Gen. No. 46,046.

Opinion filed November 16, 1953. Released for publication December 4, 1953.

CASSIDY & SLOAN, and JOHN P. COGHLAN, all of Chicago, for appellant; JOHN P. COGHLAN, of Chicago, of counsel.

WILSON & MCILVAINE, of Chicago, for appellee; CALVIN F. SELFRIDGE, and GEORGE E. HALE, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff was elected judge of the circuit court of Cook county, Illinois on June 4, 1945. Prior to his election he had, since 1912, practiced law in Chicago and had, for many years, been a representative in the General Assembly of Illinois, serving as speaker of the House during one or two sessions. In the course of his practice and as a legislator, he gained considerable experience in cases involving the Illinois Retailers' Occupation Tax. In the latter part of May 1945—which predated his election to the bench—he received an inquiry from the Norton Company of Worcester, Massachusetts, concerning his employment as attorney, which later became the subject matter of the joint venture here involved. He agreed to represent the company, but with the reservation that while he would accept full responsibility for handling the matter, since he was about to be elected as a judge of the circuit court of Cook county, all appearances in the Department of Revenue and in court would be made by and in the name of his associate, Roland Towle, the defendant

here. Plaintiff's retainer was confirmed by letter of the Norton Company, dated June 4, 1945, and received by plaintiff one or two days later. On June 11, 1945 plaintiff and defendant executed the following agreement: "It is agreed that Roland Towle will assist Elmer J. Schnackenberg in the handling of the Norton Company claim against the State of Illinois and that the fees arising therefrom shall be divided one-third to Mr. Towle and two-thirds to Mr. Schnackenberg and that Mr. Towle may handle said claim of record in the name of Hansen & Towle. It is further agreed that Mr. Schnackenberg will render all required service in handling this claim."

The claim of the Norton Company had originally been filed December 26, 1944 with the Department of Revenue of the State of Illinois, alleging payment of sales tax on items not covered by the Act and asking for an allowance of credit in the sum of $100,692.01. Following a tentative denial of the claim on May 3, 1945 by the Department, the Norton Company, one week later, filed its protest, accompanied by a demand for a hearing thereon. Subsequently it retained plaintiff and defendant to act as its attorneys in the matter. The claim was prosecuted through the Department of Revenue, the circuit court of Sangamon county, the Supreme Court of Illinois and the Supreme Court of the United States to final judgment. The litigation extended over a period of five years and eight months. During that time plaintiff continued to be a judge of the circuit court of Cook county.

The Norton Company paid legal fees and reimbursement for out-of-pocket expenses, but defendant, who received the payments, refused to account to plaintiff, except with respect to the first fee payment in the amount of $10,000. The chancellor found the account-

ing was due, stated the account to be in favor of plaintiff in the amount of $26,741.91, with interest from June 25, 1951, and entered a decree thereon in favor of plaintiff, from which defendant appeals.

Immediately following his employment by Norton Company, plaintiff began to work on its claim for credit for tax illegally exacted, as it alleged, by the State of Illinois. He and defendant consulted constantly with respect to all phases and all steps in the prosecution of the claim, including audits, classification of transactions, hearings in the Department of Revenue, and all pleadings and briefs filed in court, as well as the preparation for all hearings and arguments. However, plaintiff did not appear at any of the hearings or arguments, nor did his name appear in the records or on any document or brief filed in the Department of Revenue or in any court. After the litigation was concluded, plaintiff and defendant consulted in the preparation of a communication to the client analyzing the decision of the Supreme Court of the United States and advising the client how and to what extent it applied to its interstate transactions. Finally, plaintiff consulted with defendant as to the final fee which should be charged for all services rendered. In prosecuting the claim plaintiff performed all the services required of him and fully performed his agreement with defendant. Defendant evidently recognized the agreement and, as stated, paid plaintiff his proportionate share of the $10,000 fee received in 1946.

It is clear upon the record that when plaintiff was retained by the Norton Company and at the time he asked defendant to become associated with him in handling the matter, both parties knew that plaintiff would soon be elected a judge, and the agreement was undoubtedly drafted and executed with that even-

tuality in mind; and the testimony of the witnesses and the finding of the chancellor show that the arrangement was carried out without deviation.

Defendant now seeks to avoid an accounting of the proceeds of the joint venture on the ground of illegality. It is urged that the contract was void for any one of the following principal reasons: (1) that plaintiff's participation in the case when it was before the circuit court of Sangamon county constituted practice as an attorney in the court in which he was commissioned; (2) that the agreement whereby plaintiff undertook, for personal gain, to render services as an attorney at law on behalf of the claimant in litigation, is violative of the constitution of Illinois which circumscribes the activities in which a judge may lawfully engage during his term of office, and is contrary to the public policy of the State; and (3) that plaintiff, being a judge of a court of general jurisdiction, was disqualified to act as an attorney at law in any forum.

██ ██ The defense that plaintiff's participation in the case when it was before the circuit court of Sangamon county constituted practice as an attorney in the court in which he was commissioned, is predicated on the premise that there is only one circuit court in the State of Illinois and that plaintiff is commissioned a judge of that one circuit court. It is indisputable that the circuit court of Cook county is a part of the judicial system of the State, but that it is separate and distinct from other courts in that system is illustrated by numerous references in the constitution of Illinois where, referring to circuit courts, the plural term is constantly used. Thus, Article VI, section 1 provides that "The judicial powers . . . shall be vested in one supreme court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may

be created by law in and for cities and incorporated towns." Article VI, section 12 provides that "The circuit courts shall have original jurisdiction of all causes . . . . The terms of office of judges of circuit courts shall be six years." Section 15 of the same article states that "The general assembly may divide the state into judicial circuits . . . , and provide for the election therein, severally, by the electors thereof . . . of not exceeding four judges, who shall hold the circuit courts in the circuit for which they shall be elected"; and section 23 of the article provides that "The county of Cook shall be one judicial circuit. The circuit court of Cook county shall consist of five judges . . ." We think these constitutional provisions show that the circuit court of Cook county is separate and distinct from the other circuit courts in the State.

The constitutional provision relied on as prohibiting a judge from practicing law during his term of office reads as follows: "From and after the adoption of this constitution, judges of the circuit courts shall receive a salary of $3,000 per annum, payable quarterly, until otherwise provided by law. And after their salaries shall be fixed by law, they shall not be increased or diminished during the terms for which said judges shall be, respectively, elected; and from and after the adoption of this constitution, no judge of the supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties to which may belong any emoluments." (Art. VI, sec. 16, Constitution of 1870.)

██ ██ This provision was interpreted by the Supreme Court of Illinois in *Town of Bruce v. Dickey* (1886), 116 Ill. 527, as not prohibiting a judge from practicing law. The court reversed the judgment of

503

the trial court which had denied recovery to plaintiff Dickey for legal services performed for the defendant, the Town of Bruce, on the ground that he was a judge of the Supreme Court of Illinois at the time the legal services were performed. The Supreme Court decision also holds that there is no general prohibition in Illinois against a judge's practicing law—with the limitation of course that he may not practice in the court for which he is commissioned. The decision in the *Dickey* case has never been reversed or modified.

■ *O'Hare v. Chicago, M. & N. R. Co.* (1891), 139 Ill. 151, decided five years later, affords a further expression of the Supreme Court on this question. The limited prohibition of section 10, chapter 13 of the Revised Statutes [Jones Ill. Stats. Ann. 9.10] was there interposed in an attempt to prevent E. H. Gary, then the county judge of Du Page county, from appearing in court as attorney for a plaintiff in a proceeding in Cook county, Illinois. The applicable portion of section 10 provided that "No person who holds a commission as a justice of the Supreme Court, or as judge of any court of record, shall be permitted to practice as an attorney and counselor at law in the court in which he presides." The court there pertinently observed that "while a judge was so presiding he would manifestly be inhibited from practicing as an attorney therein," and then added that "the practice is one not to be commended, because of the tendency to bring the administration of the law into disrepute and contempt; yet we think the mere fact that at some time in the past, how remote does not appear, the judge had presided in particular cases, will not necessarily disqualify him to appear in the court as an attorney. There is no pretense that he had presided or would preside at that term of court"; and concluded that "under the facts

shown, the attorney [Gary] here sought to be excluded did not fall within the statutory inhibition." This case also has never been overruled or modified.

█ It will be noted that at that time section 10 of the statute prohibited a judge from practicing law in the court in which he *presided*. Shortly after the decision of the Supreme Court in the *O'Hare* case the statute was amended to prohibit judges from practicing in courts in which they were *commissioned*. This in effect made the amended statute more specific. It had been contended in the *O'Hare* case that JUDGE GARY could not practice in the county court of Cook county because he had at times held court there as a visiting judge, a practice which has persisted and been sanctioned throughout the years. The court held that this did not bar him. By the amendment the statute was narrowed to the construction placed on it by the Supreme Court and so as to make it clear that the disqualification applied only to the county court in which the judge was *commissioned* and not to any other court where he may have *presided* from time to time by invitation.

█ Related to the last contention is defendant's argument that the agreement in question is against public policy and therefore illegal. Defendant cites numerous cases in various jurisdictions involving contracts of employment held to be against public policy. The law in Illinois is fairly well settled, however, that as applied to contracts, the constitution, the statutes and decisions of the state courts are the proper determination for its public policy, and that the courts will not resort to other sources for the determination of that question. In *Zeigler v. Illinois Trust and Savings Bank* (1910), 245 Ill. 180, the court held that the public policy of the State or the nation is to be found in its constitution and its statutes, and when cases arise con-

505

cerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials. See also *Groome v. Freyn Engineering Co.* (1940), 374 Ill. 113, which involved an agency contract between the litigants. It was claimed that the contract contemplated performance in Russia and that by the law of Russia an agency contract involving the use of middlemen or agents is void. The court held that the question in this regard must be determined by the public policy of Illinois and not the policy of Russia, and quoted with approval from the *Zeigler* opinion.

 We think *Bruce v. Dickey* and *O'Hare v. Chicago Railway Co.*, are controlling and determine the public policy of the State. No Illinois decisions to the contrary have been cited by defendant in support of his contention that plaintiff has violated the public policy of Illinois.

 We have considered other questions raised, but in the view we take it will be unnecessary to discuss them. We are of opinion that the chancellor correctly decided the case, both with respect to the facts and the law; therefore the decree entered should be affirmed, and it is so ordered.

*Decree affirmed.*

NIEMEYER, P. J. and BURKE, J., concur.