## CAREY v. SOUTHERN LIFE & HEALTH INS. CO.

### No. 4488.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1933.

R. J. Newson, of Shreveport, for appellant.

Bryan E. Bush, of Shreveport, for appellee.

DREW, Judge.

Plaintiff sued on three insurance policies, the combined premiums of which amounted

to fifty cents per week. She attached to the petition two of said policies and alleged that the agent of defendant destroyed the other policy. The alleged destroyed policy not being in the record by duplicate or otherwise, we do not know what were its provisions and terms, and the same are not alleged by plaintiff. One of the policies attached to the petition provides for sick benefit of $5 per week, and $46.25 death benefit. The other provides for death benefit of $58, and no sick benefit.

Plaintiff alleged that she had paid the premiums as due from the date of issuance, September 21, 1925, continuously through May 20, 1932, after which time defendant refused to accept any further premiums; that the amount of premiums paid on the three policies was $166, and that by the illegal cancellation of said policies on June 6, 1932, by the defendant she has been damaged in the amount of premiums paid, with 5 per cent. per annum interest thereon and $100 attorney's fees. She further alleged that she became disabled in April, 1932, and her disability continued to the day of filing this suit; and, in the alternative, prays for judgment for $150 for disability under the provisions of the policy, and $100 attorney's fees.

Defendant contends that the policies were canceled on June 6, 1932, for failure of insured to pay the premiums for the four weeks prior thereto. It denied that plaintiff at any time made any claim or submitted any evidence as to disability as called for by the insurance contract.

Paragraph 15 of the policy reads in part as follows:

"If any premium on this policy remains unpaid for four weeks after it is due as herein provided, this policy shall lapse and all liability hereunder shall cease and determine without notice of any kind."

Paragraph 13 of the policy reads, in part, as follows:

"Failure of any agent to call for the purpose of collecting premiums will not excuse payment thereof within the time provided herein and will not prevent the lapse of the policy, etc."

We quote these provisions for the reason that plaintiff contends she had no one to pay premiums to, and the agent quit calling for the premiums. The evidence, however, does not bear her out in this contention. The agent called for the premiums until she ceased paying and the four weeks had passed and the policies lapsed. The evidence is clear that plaintiff ceased paying of her own accord because she thought the agent should bring her money instead of coming to get her money.

She is a very ignorant old negro woman, about 66 years of age, and doctors who examined her in February, 1932, testified that she was suffering from a goiter of two years' standing; had high blood pressure, and should not be at work. It appears, however, that she was working, washing and ironing, until the time the policies lapsed. She had had some boils on her arm, and no doubt felt bad, and if she had complied with the provisions of the policy she could have received sick benefit. She did not comply with the policy in any respect if we take all her testimony as true. The only claim she contends she made was in May, 1932, when she told the agent not to come back there; that he ought to bring her some money instead of coming out to get her money.

Paragraph 18 of the policy reads as follows:

"Benefits will be paid for each day that the insured is by reason of illness necessarily confined to bed, and for each day that the insured is, by reason of accidental injury, of which there is continuous external evidence, during the entire period of disability claimed, disabled from performing work of any nature, provided such confinement or disability is of not less than four consecutive days, and that due notice thereof is given the company at its nearest district office on blanks provided by the company and signed by a duly licensed and practicing physician. No liability for such a sickness or accident shall begin to accrue until such notice is received by the Company and should sickness or disability continue for more than seven days a like notice must be given at the beginning of each seven days of consecutive disability, even though preceding claim or claims may have been rejected. The total number of days for which benefits will be paid under this Policy is limited to one hundred and forty (140) days during any twelve consecutive months. Benefits will only be payable for childbirth occurring after this Policy has been in force for nine months or more, and then not exceeding half benefits for not exceeding fourteen days. Benefits for sickness or accident will not be payable should premium be in arrears two weeks or more, and the subsequent payment and acceptance of such arrears will not entitle the insured to benefits for sickness commencing or accident occurring during the period of such arrears."

[1] She did not comply with these provisions of the policy, and cannot recover for disability. She never had a doctor with her until February, 1932.

■■ Plaintiff's ignorance is to a great extent responsible for her plight, and the courts always would like to assist such litigants, but to do so we would have to make over the contracts they enter into instead of interpreting and enforcing them, and we are not given that right or privilege. The policy sued upon lapsed through failure of plaintiff to pay her premiums, and there is no relief we can grant her. The four weeks with-

in which to pay after the premium was due expired January 5, 1932. The last payment she made was a partial payment on May 2, 1932.

The lower court rejected her demands and .the judgment is correct, and is affirmed, with costs.