No. 21,043.

LONA HOPSON, *Appellant*, v. THE UNION TRACTION COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Sudden Starting and Stopping of Street Car—Special Questions.* No material error was committed in refusing to require more definite answers to certain questions propounded to the jury.

2. SAME—*Evidence—Findings of Jury.* The findings of the jury as to the plaintiff's claim that she was thrown down in the defendant's car, examined and deemed not sufficiently inconsistent or contradictory to the evidence to warrant a reversal.

3. SAME—*Sufficient Instructions.* In the instructions given the concrete claims of the plaintiff were sufficiently set forth to give the jury a

proper understanding of the isues to be tried, hence it was not error to refuse instructions stating the claimed facts still more in detail.

4. SAME—*Instruction—Contributory Negligence.* An expression in an instruction that where both parties are careless neither can recover from the other on account thereof, construed with the foregoing portion of such instruction and held to mean that the carelessness of the plaintiff in order to preclude recovery must have materially contributed to the injury.

5. SAME—*Evidence—Exclamations of Injured Party.* Evidence of exclamations of pain was excluded, but the error, if any, can not be considered because there was no showing on motion for new trial as to what such evidence would have been.

6. SAME—*Opinion Evidence—Physicians.* Certain physicians in testifying concerning examinations of plaintiff made by them and their opinions derived therefrom were permitted to say they believed she was shamming. *Held,* that while such evidence should be viewed with strictness and caution its reception in this case was not error.

7. SAME—*Sudden Starting of Car—Negligence Question of Fact.* The same rule as to starting or stopping in case of a passenger boarding a street car and reaching a seat does not necessarily apply as in leaving such car. Neither is it necessarily culpable negligence as a matter of law to start a car before a passenger thereon has reached what is deemed a place of safety, the rule governing such instances being dependent on the facts of each given case.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed October 6, 1917. Affirmed.

*A. D. Neale,* of Chetopa, for the appellant.

*John J. Jones,* of Chanute, and *Chester Stevens,* of Independence, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for injuries alleged to have been received from a fall in the defendant's street car. The jury found against her, and she appeals.

She alleged, in substance, that upon entering the car, the rear platform of which was about eight inches lower than the floor so that it was necessary to step up about eight inches to enter the car from the platform; the car was put in motion while she was removing one foot from the lower step, which caused her to be and remain unsteady when she reached the platform. That on reaching the platform she attempted to place her fare in the money box, and while she was so attempt-

ing and while she was still unsteady on account of the start-
ing of the car, and before·she had sufficient time to place her
fare in the box or to reach a place of safety in the car the
defendant negligently and recklessly caused the car to be sud-
denly and violently stopped with a lurch, at a place other than
a street crossing, thereby throwing the plaintiff down and
injuring her. The plaintiff testified that she got both feet on
the first step, then put one foot on the top step, that is the
platform.

"I had my right foot up in the air to put on the top step, when the
car started; it started with a little lurch and that got me unsteady; I
was holding with my left hand and my nickel in my right hand, and
when the car started it got me unsteady, so I grabbed with my right
hand and got the rail where I could hold to and climb up on the car;
that threw me back against the door, ·and before I could get steady I
walked one step around to the box, and had my hand up to drop the
nickel in place, just had it up that way (indicating direction) when the
car stopped suddenly, and threw me backwards, and I was struck across
the small of the back, struck the step of the car, threw my head between
the benches." .

Charles F. Neale, a witness, testified among other things :

"I saw the plaintiff enter the car; the car was in motion when I first
saw her in it; I saw her fall; she fell backward, and a little sideways;
I got hold of her arm and helped her up; she sat down in a seat and
the conductor went to her and talked with her; did not know if she was
hurt; she was a large woman; when I first saw her the car was in
motion; she then was kind of wobbly; the car then stopped, the con-
ductor having given a signal to stop; the car stopped with a quick
jerk; a quicker stop than ordinary; after the car started it went per-
haps 20 or 25 feet before it stopped a second time. The car stopped to
let this woman on, and then stopped again with a quick jerk before she
got seated; it was when it stopped the last time that the woman fell
down."

Another witness, Mrs. Smith, testified that she was on the
car and saw the plaintiff in the aisle about to deposit her fare,
the conductor gave the signal to start, and when it had gone
15 or 20 feet he gave another signal to stop, and it stopped.
Witness did not see the plaintiff fall or see her on the floor,
but saw her rubbing her arm or shoulder. R. B. Whipple, the
conductor, testified among other things that the plaintiff was
on the car and in the vestibule when he gave the signal to
proceed. He looked around and saw a man coming; looked
again and saw the plaintiff sitting down in the doorway of

the car, her feet in the vestibule; then the car ran 20 or 25 feet after it started before it stopped again. When it stopped the second time he saw the plaintiff on the floor; had some conversation with her when she left the car, said she believed she was hurt, believed she had hurt her arm or strained it. After she got up off the floor someone took her or assisted her to a seat. He remembered stating after the injury that the motorman brought the car to a very quick stop, and that just as he did so Miss Hopson fell down. The jury answered special questions to the effect that the car moved from 5 to 25 feet after the plaintiff boarded it until it came to a stop, and also the following:

"Q. 1. Do you find that plaintiff was thrown down by the stopping of the defendant's car before she reached her seat? A. 1. We don't know.

. . . . . . . . . . . . . . . . .

"Q. 3. Do you find that the witness Neale assisted the plaintiff to get up after she had fallen down in the car? A. 3. We find he helped her from a sitting position.

. . . . . . . . . . . . . . . . .

"Q. 5. At the time the plaintiff fell, state whether the car was stopped at a usual stopping place? A. 5. We don't know that she fell.

"Q. 6. Do you find that the plaintiff, Lona Hopson, was guilty of any negligence on her part which contributed to her injury? A. 6. Yes.

"Q. 7. If the above question is answered 'Yes' state of what negligence you find Lona Hopson guilty which contributed to her injury? A. 7. By not making an effort to seat herself at once.

"Q. 8. Do you find that the defendant through its servants and agents, knew, or ought to have known of the situation of Lona Hopson prior to or at the time she fell? A. 8. He did know."

Complaint is made that answers were not required to be made more full as to the maximum speed of the car, as to whether the plaintiff was thrown down, as to whether the witness Neale assisted her to get up after she had fallen down and whether the car was stopped at a usual stopping place. We find no evidence touching the maximum speed, and there was no dispute as to where the car was stopped. The other matters were sufficiently covered by the answers given.

The jury are criticised for not finding that the plaintiff fell or was thrown down in the car as indicated by their answer to question No. 8. But the majority of the court deem it possible that the jury may have concluded that she merely came

Hopson v. Traction. Co.

to a sitting position, and not that she was thrown down prone by the sudden stopping of the car.

Instructions were offered embodying in detail the charge of the plaintiff as to the alleged cause of the injury, to the effect that if the jury found such to be the facts the verdict should be for the plaintiff. These were refused. Instead, the court gave instructions covering the duty of the defendant with respect to the plaintiff in view of the charge of starting the car without giving her time to deposit her fare and reach a place of safety, and causing the car to stop suddenly knowing that she had not yet reached a place of safety after boarding the car, and the jury were advised that the defendant owed her the duty of exercising, the highest degree of care reasonable and practicable in the management of its cars, and for failure to exercise such care would be liable. A careful examination of the instructions given, as well as those refused, leads to the conclusion that no error was committed in respect thereto, those given being sufficiently concrete to give the jury a proper understanding of the issues to be tried.

The jury were told:

"If the injuries complained of by the plaintiff were the joint result of the plaintiff's carelessness and lack of vigilance for her own safety, and of the failure of the defendant's servants in charge of said car to properly manage the same, then this verdict must be for the defendant and against the plaintiff, as, if both parties are careless, neither can recover from the other on account thereof."

.The last clause is assailed as an improper or incomplete statement of the law of contributory negligence, and if taken by itself would be subject to criticism, but, in connection with the former part of the sentence referring to the injury as the joint result of the carelessness of both parties, the idea that the carelessness of the plaintiff must have materially contributed to the injury is conveyed.

Complaint is made of refusal to permit testimony of certain witnesses as to exclamations of pain by defendant, but there was no showing on the motion for new trial as to what such evidence would have been and therefore the error, if any, can not be considered. (Civ. Code, § 307.)

Certain physicians in testifying concerning examinations of the plaintiff made by them and their opinions derived therefrom were permitted to say that they believed she was sham-

ming. This is said to have been erroneous and an invasion of
the province of the jury who alone were to determine whether
or not the plaintiff was injured. It was proper to receive evi-
dence of the condition of the plaintiff when so examined and
the opinion of such witnesses as to whether or not she was then
suffering from any injury. But whether she was honest or dis-
honest, sincere or shamming, in respect to her claims of pain
or injury was a matter about which the jury might have drawn
their own conclusions from the facts given by the physicians
without their opinions. A search for authorities discloses
however that similar evidence has in some cases been admit-
ted. (*Austin & N. W. Ry. Co. v. McElmurry,* 33 S. W.
(Texas) 249; *State v. Hayden,* 51 Vt. 296; *People v. Koerner,*
154 N. Y. 355; *Chicago Union Traction Co. v. Fortier,* 205 Ill.
305.) (See also *Cole v. Railway Co.,* 95 Mich. 77.) While
such evidence should be viewed with strictness and caution its
reception in this case was not error.

It is insisted that the same rule applies in boarding a car
and reaching a seat as in leaving the car, so far as the duty
of the company to refrain from starting or stopping is con-
cerned, and it is urged that the trial court erroneously refused
an instruction that it is culpable negligence to start a car
before the passenger has reached a place of safety thereon.
Authorities on both sides of the question are presented, but
we hold that the effect of a sudden start or stop while one is
leaving a street car must of necessity in many cases, if not in
all, be different from that of such start or stop while one is in-
side the car in the act of reaching a seat. Neither can it be
said as a matter of law that it is culpable negligence to start
such car before a passenger thereon has reached what is
termed a place of safety. The rule governing such instances
must of practical necessity be dependent on the facts of each
given case. (See *Railway Co. v. Warren,* 74 Kan. 248, 89 Pac.
656; *Ewing v. Street Railroad Co.,* 91 Kan. 388, 137 Pac. 940;
*Helms v. Railroad Co.,* 96 Kan. 568, 152 Pac. 632.)

The evidence for and against the plaintiff's claim of injury
was such that a verdict either way would find some support.
It is manifest that the jury were not convinced that she was
entitled to recover anything. Their general verdict against
her would leave her without relief, even if they had found

she was thrown down as alleged. The rulings complained of are not found to be such as to warrant us in setting the verdict aside.

The judgment is affirmed.

WEST, J., dissenting: Although all the evidence of the plaintiff's condition and treatment for weeks after the occurrence may have failed to convince the jury that she received any injury, it was their duty to answer the questions submitted fairly and consistently. This they did not do and plaintiff was thereby deprived of her right to a fair trial.