No. 34,790

AUGUST FRICKE, *Appellant,* v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Appellee.*

(106 P. 2d 677)

Opinion filed November 9, 1940.

*Walker F. Means* and *Paul B. Bailey,* both of Hiawatha, for the appellant.

*Harry E. Miller,* of Hiawatha, and *Ralph M. Jones,* of Kansas City, Mo., for the appellee; *Louis W. Dawson,* of New York City, N. Y., *William C. Michaels, Charles M. Blackmar, Samuel D. Newkirk, Henry I. Eager* and *Roy P. Swanson,* all of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

HARVEY, J.: This was an action upon the permanent disability clauses in three life insurance policies issued by defendant to plaintiff. The jury answered special questions and returned a general verdict for defendant, on which judgment was rendered. Plaintiff has appealed.

The pertinent facts may be stated as follows: Plaintiff, fifty-four years of age at the time of the trial in November, 1939, was reared on a farm in Brown county. He reached only the fifth grade in school. He had been a farmer all his life; had never qualified himself for other business. On February 3, 1919, defendant issued to him a 20-payment life insurance policy in the principal sum of $5,000. This policy contained the following provisions, material to this action:

"BENEFITS IN THE EVENT OF TOTAL AND PERMANENT DISABILITY

"*When such benefits take effect.*—If the insured, after payment of premiums for at least one full year and before default in the payment of any subsequent premium and before attaining the age of sixty years at nearest birthday and while this policy is in full force, shall furnish due proof to the company at its home office that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, or from following any gainful occupation, and that such disability has then existed continuously for not less than sixty days, the company will grant the following benefits.

"BENEFITS

"1. *Waiver of premium.*—The company will, during the continuance of such disability, waive payment of each premium as it thereafter becomes due, commencing with the first premium due after receipt of said proof of such disability.

"2. *Income to assured.*—One year after the anniversary of the date of issue of this policy next succeeding the receipt of said due proof, the company will pay to the insured, if then living and such disability still continue, a sum equal to one-tenth of the face amount of the policy, but not including dividend additions, and a like sum on each such anniversary thereafter, if the insured be then living and such disability still continue.

"The face amount of the policy shall not be decreased because of any premium waived or any income payment made nor shall such waived premium or income payment be deducted in any subsequent settlement of the policy, and the loan and surrender values will increase each year in the same manner as if each premium had been paid when due instead of being waived.

"PROOF OF CONTINUANCE OF DISABILITY REQUIRED

"*Recovery from disability.*—Although the proof of total and permanent disability may have been accepted by the company as satisfactory, the insured shall at any time thereafter, and from time to time, but not oftener than once a year, on demand, furnish to the company due proof of the continuance of such disability, and if the insured shall fail to furnish such proof, or if it shall appear to the company that the insured is able to perform any work or follow any occupation whatever for compensation, gain or profit, no further premium shall be waived and no further income shall be paid."

On September 26, 1922, defendant issued to plaintiff two ordinary life policies, one in the principal sum of $3,500, the other in the principal sum of $1,500, which contained provisions for benefits, in the event of total and permanent disability, similar to those in the policy first mentioned. Minor distinctions in these provisions of the policies need not be noted at this time.

Plaintiff paid the premiums on each of these policies until in December, 1931. In that month plaintiff made proof to defendant of his total disability by bodily injury and disease. Defendant approved the proof offered, waived the premiums on each of the policies, and paid the benefits provided in each of them until in December, 1938, at which time defendant asked for proofs of continued disability. Plaintiff made proofs which defendant regarded as unsatisfactory, and on December 23, 1938, notified plaintiff that proofs submitted were not sufficient to show plaintiff's total and permanent disability in accordance with the policy provisions beyond the date to which benefits had been paid.

Thereafter this action was brought. In the trial the principal issue presented by the pleadings was whether at the time defendant ceased to make benefit payments on the policies, or at the time of the trial, plaintiff was "totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, or from following any gainful occupation," within the meaning of the respective policies. The jury returned a general verdict for defendant, and answered special questions as follows:

"1. Was plaintiff totally and permanently disabled by bodily injury, so that he is and will be. permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, or from following any gainful occupation? A. No. . . .

"3. What, if anything, do you find from the evidence plaintiff is doing toward managing or. directing or carrying on farming operations on the 240-acre

farm on which he lives, consisting of 80 acres owned by him and 160 acres rented from his mother? A. Managing, supervising and directing the operations, owns the equipment, markets the crops and other products raised and produced on the farms, and receives the money.

"4. What, if anything, do you find from the evidence plaintiff is doing toward managing or directing or carrying on farming operations on the 160 acres rented from Mr. Burdick and Mr. Uhlin by his son, on which the plaintiff receives a share of the proceeds of crops? A. Manages, supervises and directs the operation. Owns the equipment used on the farm, markets the tenants' share of the crops raised and receives the money.

"5. What, if anything, do you find from the evidence plaintiff is doing toward managing or directing or carrying on farming operations on the additional 40 acres and the additional 18 acres owned or rented by another son? A. Advising and furnishing the equipment used in operating the farm.

"6. Is 'Caries' or 'Potts' disease the cause of the disability which plaintiff claims? A. No.

"7. Does plaintiff engage in stock raising on his own or rented land? A. Yes.

"8. Is plaintiff handicapped by the disability he claims from engaging in his normal farming operations otherwise than by inability to do manual labor? A. Yes.

"9. If you answer question No. 8 in the affirmative, state in what way plaintiff is handicapped by the disability he claims from engaging in normal farming operations. A. Suffers pain, unable to get around normally."

Plaintiff's motion for a new trial was overruled. As appellant he contends that under the wording of the policies, and particularly the two last issued, total disability once shown to exist for a period of ninety days or more is presumed to be permanent; hence, that plaintiff should have recovered unless defendant had shown that plaintiff's disability, which defendant had recognized and for which it had paid benefits for several years, had ceased. The question in this form appears not to have been presented to the trial court. Instructions requested by plaintiff did not include one embodying this theory, nor does the record elsewhere show it was presented to the court. But, passing that, we think the point not well taken. If it is true that defendant paid plaintiff benefits under the policies for several years when, under the facts, it need not have done so, as some of the evidence tended to show, this fact would not preclude or estop defendant from requiring proof of total and permanent disability, as those terms were used in the policies. See *New York Life Ins. Co. v. Stoner*, 109 F. 2d 874, and *Maupin v. Providence Life & Accident Co.*, (Mo. App.) 75 S. W. 2d 593.

Appellant next contends that the uncontradicted evidence in the case requires judgment in his favor. Briefly, this evidence is to the

effect that since appellant sustained an accidental injury in December, 1931, he has not been able to perform the manual labor on the farm which he did previously. It may be conceded that the evidence, fairly considered, established that fact. But these provisions in the policies do not provide benefits simply when one is not able to do heavy physical labor. The showing must be that the insured must be prevented "from performing any work for compensation, gain or profit, or from following any gainful occupation." Of course, he might follow a gainful occupation without being able to perform heavy manual labor, and that appears to have been what was done here. There is an abundance of evidence that he managed, supervised and directed the operation of his farms and attended to all the business in connection therewith, and that this was a substantial business, successfully managed and conducted. The jury so found in answer to special questions 3, 4, 5 and 7.

Appellant complains that the court submitted special question No. 6 to the jury. The pleadings made this an issue in the case. In the petition plaintiff alleged that his disability was the result of Caries or Potts disease. There was evidence bearing on the matter. We think the court was justified in submitting the question upon defendant's request. It was argued that the answers returned by the jury to special questions 8 and 9 are in conflict with the answer to question No. 1 and with the general verdict, and that this conflict requires the granting of a new trial. We think this point is not well taken. These answers are findings that plaintiff suffered some pain and experienced some inconvenience in doing the things they found by the answers to their questions 3, 4, 5 and 7 that he was doing, but not sufficiently serious to prevent him from doing those things. We think this is not an inconsistency with the answer to special question No. 1, or with the general verdict.

The benefits under the policy first issued were paid annually on the anniversary of the date of the issuance of the policy, which was on February 3. In 1938 defendant had paid the benefits on February 3. It was not until December of that year that it served notice on plaintiff that further payments would not be made. Appellant now contends that in any event he should have recovered the part of the $500 for the portion of the year February 3 to December 21. This point appears not to have been raised in the court below. More than that, having made the payment in February, 1938, there was no other payment due until February, 1939.

The controverted issue in the case, as framed by the pleadings, was whether plaintiff, since the last payment of benefits under the policies, was totally and permanently disabled by a bodily injury or disease so that he was, and will be, permanently, continuously and fully prevented thereby from performing any work for compensation, gain or profit, or from following any gainful occupation. The burden of proof that he was so disabled was upon plaintiff. Much evidence was taken upon that question, and upon it the jury found against plaintiff. Without setting out this evidence at length, the court has examined all of it and finds substantial, competent evidence to support the verdict of the jury. Appellant makes some complaint of the special questions submitted to the jury. We think there was no error in the court's ruling in this particular. Appellant complains of evidence received pertaining to the value of the crops and other income from the farm. This evidence was competent as going to the extent of the business which the jury found plaintiff managed, supervised and directed, and as to whether what he was doing was following a gainful occupation. Appellant also complains of the reception in evidence of the reports of defendant's physician who had examined plaintiff from time to time over the years when benefits were being paid. Some of these reports indicated plaintiff at that time was not entitled to the benefits. The physician could have testified to what was in the reports. (*Hopson v. Traction Co.,* 101 Kan. 499, 167 Pac. 1059.) There was nothing seriously wrong with admitting these reports in evidence.

We find nothing in the record which requires or would justify a reversal of the judgment of the trial court, hence it is affirmed.