No. 45,513

WILLIS D. WOODS, *Appellant,* v. AETNA LIFE INSURANCE
COMPANY, *Appellee.*

(464 P. 2d 183)

Opinion filed January 24, 1970.

*Donald B. Clark,* of Wichita, argued the cause, and *Charles D. Anderson, Marvin R. Appling* and *David C. All,* all of Wichita, were with him on the brief for the appellant.

*Robert C. Foulston,* of Wichita, argued the cause, and *Robert L. Howard, Jerry G. Elliott* and *John E. Neal,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by the plaintiff to recover permanent and total disability benefits of $6,500 under a group insurance policy issued by the Aetna Life Insurance Company (defendant-appellee). The case was submitted to a jury which returned a verdict in favor of the defendant Aetna. Appeal has been duly perfected by the plaintiff.

The only issue presented is whether the trial court applied the proper rule of law to determine if the appellant was totally disabled within the meaning of the group insurance policy issued by Aetna.

Willis D. Woods (plaintiff-appellant) is forty-two years of age with a formal education consisting of the first seven grades and

two weeks of the eighth grade. In 1961 he received a certificate equivalent to a high school diploma. Prior to military service his occupation consisted of hauling freight, service station work, and a few months as a welder's tacker.

In 1945 he entered the Army and worked as a supply clerk. He was released from active duty with the Army in 1951 as a Corporal, but joined the Army Reserve in 1954 and attained the rank of Staff Sergeant.

In 1951 the appellant went to work for the Boeing Company at Wichita, Kansas. He worked regularly for Boeing until August, 1963, except for two occasions when he was hospitalized for approximately one month on each occasion for a back condition diagnosed as rheumatoid spondylitis, also known as Marie-Strümpell's arthritis. X-ray treatments arrested the disease, but it was necessary for him to return to the hospital for treatments.

His last date of employment with Boeing was August 13, 1963, after which he was hospitalized from August 23, 1963, to October 11, 1963. Upon release Boeing placed him on the inactive payroll because of his lifting restrictions of not over thirty to thirty-five pounds, which were later reduced to lifting not more than ten to fifteen pounds.

At all times material hereto the appellant was subject to the provisions of a disability insurance policy issued by Aetna providing for a lump sum benefit of $6,500 in the event of total disability.

Pursuant to the appellant's application for workmen's compensation benefits, he was examined by an orthopedic surgeon, Dr. Robert A. Rawcliffe, Jr., in February, 1964, who stated in an opinion that he then thought claimant was disabled from doing any but light desk-type work. His disability was then rated about thirty-five to forty percent, and he was awarded maximum compensation payments of $42 weekly payable for 415 weeks.

Dr. Rawcliffe again examined the appellant as of June 24, 1967, and stated:

"I took a history from plaintiff during my 1967 examination of him during which he told me he had gotten worse since my 1964 examination. During my 1967 examination, however, I found no evidence of muscle atrophy, but that plaintiff did not exert normal strength during the test for muscle power in the upper extremities. Since he had no muscle atrophy, there is no reason he could not exert normal strength unless he did not want to do it. Plaintiff also registered inconsistencies in leg raising tests designed to ascertain nerve irritation,

when the results of the different tests should have been consistent. Plaintiff also claimed to have a sensory loss in the lower extremities, but I could find no medical basis for it. Incidentally, arthritis does not usually produce any change in sensation in the extremities in any event. These findings during my examination suggested to me a deliberate attempt on the part of plaintiff to exaggerate his disability.

"It is my medical conclusion that 'there are a number of Findings on the physical examination which suggest a deliberate attempt on the part of the patient to exaggerate his disability. The finding of decrease in sensation cannot be explained on the basis of rheumatoid arthritis. The patient very obviously does not attempt to exert normal muscle power when I am testing for muscle strength, and this suggests a deliberate attempt to exaggerate his disability. On the basis of these findings, it is my impression that this patient very definitely does not have total disability. In other words, it is my opinion that this person is not totally and permanently disabled according to the definition given as being "unable to engage in employment or occupation for compensation or profit." I do believe that the patient has some partial disability, but I am not convinced that this would keep him from engaging in any type of occupation. Furthermore, there is some evidence that the patient deliberately exaggerates his symptoms; and to this degree, at least, he is deliberately malingering.' . . ."

At the time of trial Dr. Rawcliffe was of the opinion the appellant could do heavier work than he had concluded in 1964.

On July 6, 1964, the appellant was examined in behalf of the Social Security Administration by an orthopedic surgeon, Dr. Eugene E. Kaufman of Wichita, Kansas, for the purpose of evaluating him for social security benefits. Pursuant to the findings and examinations of Dr. Kaufman the claimant was granted compensation for himself, his wife and four children totaling $296.40 monthly.

Subsequent to the appellant's release from the hospital on October 11, 1963, Boeing on at least two occasions requested a status report from the appellant in order to maintain him on Boeing's inactive payroll. Status reports were requested in a letter dated July 6, 1965, indicating that the appellant had not contacted Boeing since April, 1964, and in another letter dated October 10, 1966, indicating that Boeing had not heard from him since July, 1965.

In addition to examinations by Dr. Kaufman on July 6, 1964, and June 17, 1965, and the examinations of Dr. Rawcliffe, the appellant was examined by Dr. Gerald E. Cronk of Tulsa, Oklahoma, Dr. Charles Phillip Rhodes and Dr. Jack E. Moseley, both of Wichita, Kansas. All of the medical examiners concurred with the diagnosis of Marie-Strümpell's arthritis of the sacroiliac, also known as rheumatoid spondylitis; that the appellant could not do the heavy

type of lifting work he was previously doing at his job with the Boeing Company, but that he could do some type of light work and obtain gainful employment.

The record discloses Dr. Moseley's notes which show that on March 14, 1966, the appellant told the doctor he was working twelve to fourteen hours a day that Boeing did not know about. Dr. Kaufman, who examined the appellant in 1964 and 1965, stated the appellant could lift more than fifteen pounds to which Boeing restricted him, and there was no reason why he could not do light work.

Dr. Charles Phillip Rhodes, a specialist in internal medicine, who examined the appellant in 1967, testified the appellant's condition of rheumatoid spondylitis was arrested or inactive, and that the appellant was certainly not totally disabled for many types of work. He also concluded the appellant was "probably malingering." Dr. Cronk, who examined the appellant in 1964, stated the appellant certainly could be gainfully employed at some type of work and would make a good candidate for vocational rehabilitation.

A doctor's certification dated December 10, 1963, from L. G. Schulze of the Veterans Administration discloses the appellant was released by the doctor "as able to work" on October 14, 1963.

The appellant is currently receiving more from workmen's compensation and social security than he has ever earned at employment in his lifetime, according to his own testimony. He presently owns five lots in Ketchum, Oklahoma, and raises thirty-five to forty rabbits as a hobby. He has averaged a dozen or more hunting trips during the past three hunting seasons. He fishes and is able to start the thirty horsepower, manual start motor, on his sixteen-foot boat. He is able to work in his garden, mow his yard, and do repair jobs on his house. He admits there are all kinds of jobs available that he has not even explored, investigated or attempted to undertake. He has made no inquiry about becoming a welder, for which he has had some training, a bailiff, a salesman servicing racks in drug stores, or about undertaking similar jobs. He openly admits he could probably do such jobs as being a night watchman where he could sit and walk around at his leisure.

The appellant's real complaint is that he could not return to the identical job he had at Boeing, and he will not work for less money.

After being fully instructed the case was submitted to the jury, and it returned a verdict for the Aetna Life Insurance Company.

The issue to be determined on this appeal is focused in the following instruction submitted to the jury:

"You are instructed that the Boeing Company group policy with defendant provides a lump sum benefit of $6,500.00 in the event an employee, such as Willis Woods, proves that he has become:

" '. . . totally disabled by illness or injury and that the disability has existed continuously for a period of six months or more and will presumably prevent the employee, for life, from engaging in employment or occupation for compensation or profit.'

"*You are instructed that a total disability is one which results from an illness or injury and which makes it impossible for a person to follow continuously a substantially gainful occupation at any kind of work for which he is competent or qualified, physically and mentally, or for which he could qualify himself by a reasonable amount of study and training.* Total disability, within the meaning of insurance policies, does not necessarily mean utter helplessness, nor inability to perform any task, or even in some cases, usual tasks for a limited period. An insured need not be absolutely helpless before he is entitled to the benefits for total and continuous disability. *It is only necessary that the disability render him unable to perform the substantial and material acts of his business or occupation in the usual and customary way.* The word 'continuously' means with reasonable regularity. It does not preclude periods of disability which are ordinarily incident to activities of persons in generally sound health, for nearly all persons are at times temporarily incapacitated by injuries, or poor health, from carrying on an occupation. A disability is permanent when it is of such a nature that it is reasonably certain it will continue throughout a person's lifetime." (Emphasis added.)

The provision of the insurance policy in question is correctly set forth in the above instruction. It does not limit the meaning of total disability merely to the inability of the insured to perform the work of *"his"* former occupation, nor does it mean he must receive the same monetary benefits. This was recognized by the trial court which, after stating the provision of the policy in question, instructed as indicated in the first italicized portion of the above instruction. It is this portion of the instruction to which the appellant objected at the time of trial, and for which he now contends the trial court erred.

The appellant relies upon *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 366 P. 2d 219, contending the meaning of total disability was settled therein once and for all. The language in the *Wolf* case upon which the appellant relies is as follows:

"Total disability, within the meaning of insurance policies, does not necessarily mean utter helplessness, nor inability to perform any task, or even in some cases, usual tasks for a limited period. It has been said, to hold otherwise would be to penalize every effort of the insured person to rehabilitate

himself. (*Hodgson v. Mutual Benefit H. & A. Ass'n,* 153 Kan. 511, 112 P. 2d 121.)" (p. 706.)

The appellant contends the court then broadened its interpretation of total disability in the *Wolf* decision by the following statement:

". . . An insured need not be absolutely helpless before he is entitled to the benefits for total and continuous disability. It is only necessary that the disability render him unable to perform the substantial and material acts of *his business or occupation* in the usual and customary way. (*Pearson v. Prudential Ins. Co.,* supra [214 La. 220, 36 So. 2d 763].)" (p. 710.) (Emphasis added.)

The appellant contends the trial court in the first italicized portion of the instruction quoted interpreted the words "total disability," as defined in *Berry v. United States,* 312 U. S. 450, 85 L. Ed. 945, 61 S. Ct. 637.

The *Berry* case was cited in *Hodgson v. Mutual Benefit H. & A. Ass'n,* 153 Kan. 511, 112 P. 2d 121, with approval, and the definition of "total disability" set forth in the *Berry* case was quoted with approval in *Wolf v. Mutual Benefit Health & Accident Association,* supra, at page 707.

The appellant argues the *Wolf* case merely acknowledged the foregoing definition of total and permanent disability in *Berry,* but refused to follow the broad term "any kind of work," and required that the disability render the workman unable to perform "his business or occupation." He contends the requirement provided by the *Hodgson* and *Berry* cases of "any kind of work" has now been modified by the *Wolf* case to "his business or occupation."

The appellant has misconstrued the decision in *Wolf* by taking the expression in *Wolf* upon which he relies out of context.

Contrary to the situation in the case at bar, there was nothing whatever in the record in *Wolf* to disclose whether the insured could work at any other occupations which would not require him to be on his feet for long periods of time. Without such evidence before it the court, in determining whether the insured was totally disabled, had *only one occupation to refer to*—the insured's occupation at the time the alleged disability occurred. On the facts in *Wolf* it was natural for the court to refer to "his" occupation, without intending to limit the test for total disability to the ability to perform "*his*" former business or occupation.

This interpretation of the *Wolf* opinion is apparent when consideration is given to syllabus ¶ 5, where the court defines "total dis-

ability" as the inability to perform "a" business or occupation, rather than the ability to perform "his" business or occupation.

The most significant aspect of the *Wolf* holding is its reliance upon the definition of "total disability" contained in *Berry v. United States,* supra.

In *Berry* the United States Supreme Court approved the following instruction which this court quoted in *Wolf:*

" ' "A total disability is any physical or nervous injury which makes it impossible for a person to follow continuously a substantially gainful occupation *at any kind of work* for which he was competent or qualified, physically and mentally, or for which he could qualify himself by a reasonable amount of study and training. . . ." ' " (p. 707.) (Emphasis added.)

The holding of this court in the *Wolf* case is consistent with its prior holdings in *Maresh v. Peoria Life Ins. Co.,* 133 Kan. 191, 299 Pac. 934; and *Fricke v. Mut. Life Ins. Co.,* 152 Kan. 525, 106 P. 2d 677. The facts in the *Fricke* case are similar to those in the instant case.

Actually the instruction given by the trial court in the instant case, as heretofore quoted, is more advantageous to the appellant than it should have been. The second italicized portion quoted makes reference to "his" business or occupation, thus making it inconsistent with the rest of the instruction. The appellee objected to this portion of the instruction in the trial court, but it was given over objection.

We hold the instruction given by the trial court did not prejudice the appellant in the trial of this action. There was abundant evidence to support the jury's finding that the appellant was not totally disabled within the meaning of the test for total disability consistently applied by this court in such decisions as *Fricke* and *Wolf*—that the appellant was not disabled to such an extent that he was prevented from performing *any* work for compensation, gain or profit.

Upon the record presented the jury may well have believed the appellant was not totally disabled, but was in fact a malingerer. Under the circumstances it would have been error for the trial court to take the issue from the jury and direct a verdict for the appellant. (*Baker v. Western Casualty & Surety Co.,* 196 Kan. 345, 411 P. 2d 711; *McKinney v. Cochran,* 197 Kan. 524, 419 P. 2d 931; and *Bingham v. Hillcrest Bowl, Inc.,* 199 Kan. 40, 427 P. 2d 591.)

The judgment of the lower court is affirmed.

Fatzer, J., dissenting.