No. 28,538.

A. J. Boberg, *Appellee*, v. The Fitchburg Mutual Fire Insurance Company, *Appellant*.

(275 Pac. 211.)

Opinion filed March 9, 1929.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the appellant.

*N. C. Else,* of Osborne, *A. E. Crane, B. F. Messick* and *Harry Crane,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.:   The defendant in this case, a mutual fire insurance company, appeals from a judgment rendered against it in favor of a merchant on a fire insurance policy covering a stock of merchandise and fixtures.   The defense was that the company was not liable because the application contained statements and warranties which were false and because of the failure of the plaintiff to make proof of loss.   The reply alleged knowledge of the company, both as to the actual facts furnished for the application and as to the extent of the loss.

The case was tried to a jury, and at the close of the testimony the court reformed the answers to three questions contained in the application, and then submitted the remaining issues involved to the jury, with instructions covering such issues in the light of the application and policy as reformed.   The jury found for the plaintiff and answered several special questions, and judgment was rendered for plaintiff for the face value of the policy and interest, together with costs, including an attorney fee of $750.

The policy contained what is called the "iron safe" clause, which requires the making of an inventory and keeping books showing purchases and sales, and the keeping of such inventory and books in an iron safe.   In this case it was admitted they were not in the safe at the time of the fire and the inventory had not been completed. The application had been taken by one spoken of as a soliciting agent, although it is shown that he collected and remitted premiums and delivered policies for the company.   He sent his applications to and transacted his insurance business with the general agent of the company at McPherson, Kan.   He procured this application from the plaintiff on January 16 and sent it and the premium at once to the general agent, who acknowledged receipt of it and sent the policy, dated January 19.   He remailed it to the plaintiff, who received it January 22.   The fire occurred between 10 and 11 o'clock p. m. on January 21.   The loss was total, including the books and incomplete inventory.

The three answers in the application which the court reformed were to questions numbered 5, 6 and 7:   No. 5, that the application shows that his last inventory was dated January 1, 1926, and that he agreed to keep it and the books in an iron safe; No. 6, that none of

the stock was incumbered; and No. 7, that there was no other in-
surance on the stock.

The court, after hearing all the evidence, reformed these three
answers as follows:

"That it was agreed between the parties to the insurance policy that plain-
tiff should have one week in which to finish the inventory being taken and
place the same, together with the books kept by plaintiff, in the iron safe.

"That the application and policy should read, 'Taken on said stock of
goods, including a cash register, bought on installment plan, all of said install-
ment not having been paid.'

"The application should read, 'Taken subject to a one thousand dollar
($1,000) policy on said goods, held by the Northwestern and Marine Fire
Insurance Company.'"

The evidence supporting such reformation was given by the plain-
tiff and the local agent who wrote the application, both to the same
effect—that the agent had written the answers; that plaintiff signed
the application without reading it; that plaintiff showed the agent
the incomplete inventory covering $3,300 of goods, besides the
fixtures; that same could be completed within one week, and then
it and the books would be put in the iron safe, to which the local
agent agreed as being satisfactory; that the cash register had been
purchased on the installment plan, on which the last few payments
had not been made; that he had a $1,000 policy on the goods written
by another company assigned to him, which he showed to the agent,
but the agent thought the assignment was not good, so disregarded
it; that the agent used his own judgment in omitting these details
in the answers. The agent further testified he sent a letter to the
general agent with the application and premium, stating fully all
these particular matters.

Appellant alleges error in the admission of the evidence of the
local agent, because he was not such an agent as could bind the
company; and as to his sending a letter to the general agent with the
application and premium fully stating such matters, appellant
directs attention to the testimony of such general agent, in which he
says he did not receive such letter. We cannot solve the apparent
conflict as to sending and receiving such letter. The trial court saw
and heard the two witnesses, and may have had strong reasons for
thinking and believing one of them had a poor memory or was mis-
taken. Assuming that one who is only a soliciting agent may not be
able to make general concessions that will bind the company, yet
if he informs the general agent fully of such matters before the

policy is written and the general agent, with the full knowledge of such modification of the answers and requirements in the application, writes the policy and returns it to the applicant through the local agent, the company is undoubtedly bound thereby.

"The power of insurance agents to bind their principals is to be determined by the power they are held out by the companies to the public as possessing, and not by written instruments of appointment, of which the public could have no knowledge. It is accordingly held that an insurance agent, furnished by his principal with blank applications and with policies, duly signed by the company's officers, and who has been authorized to take risks, to issue policies by simply signing his name, to collect premiums, and to cancel policies, without consulting his principal, is empowered to waive conditions of forfeiture in such policies, and his knowledge is the knowledge of the insurer, notwithstanding any excess of his actual authority." (14 R. C. L. 1158.)

The trial courts may in the progress of the trial reform an application and policy to conform to the facts stated and agreements made in connection with the writing of the application, when it is shown by a preponderance of the evidence that the general agent was fully informed of such matters before issuing the policy. (*Palin v. Insurance Co.*, 92 Kan. 401, 140 Pac. 886; *Mercantile Co. v. Insurance Co.*, 101 Kan. 522, 168 Pac. 323.)

Further objection was made to the introduction of evidence as to value of the stock of goods and fixtures, because some of the witnesses so testifying failed and were unable to give exact quantity and quality of the different kinds of goods at the time of the loss. It is true none were able to give either quantity or quality accurately. The plaintiff had quite an accurate knowledge by reason of having recently worked on the inventory. The banker examined the stock and fixtures carefully immediately before the fire for the purpose of making a loan on the same. The depot agent had a record of all the recent consignments of goods by name and weight. The local insurance agent had examined the incomplete inventory five days before the fire. If an inventory and book of purchases and sales had been extant, of course some of this evidence received might have been incompetent, but from anything shown in the record it was the best evidence available.

Appellant alleges error because there was no proof of loss and because the court instructed the jury that the defendant company had in effect waived it by sending, or rather promising to send, an adjuster. In the first place, it is somewhat uncertain as to whether or not the policy on a stock of merchandise containing the iron safe

clause literally requires the usual and ordinary proof of loss. It requires notice, and in addition thereto, "shall produce such books and last inventory" and certificate and other information "if required." The evident purpose of the policy is to substitute the books and inventory for the ordinary enumeration of quantity and quality of articles lost. Suppose the books and inventory had been in the safe as intended and they should have been burned just the same without the fault of any of the parties interested; what would then have been required as proof of loss?

"The object of the proofs is to furnish the company with the particulars of the loss and all data necessary to determine its liability and the amount thereof. Unless required by the policy, no particular form of proofs is necessary so long as they are ample to enable the company to consider its rights and liabilities. . . . The requirements of the policy as to the contents of the proofs are given a liberal and reasonable construction, and a substantial compliance therewith is all that is necessary. . . . A stipulation in the policy requiring proofs of loss does not require that there shall be strict legal proof of a loss, but only that there shall be the best evidence of the facts that insured or the claimant has at that time." (33 C. J. 17, 18.)

It is required that they be put in the safe so as to furnish the exact and perfect proof of loss. The notice of total loss and the knowledge and investigation of the company of five days earlier certainly, under these circumstances, meet the requirement in at least a general way. If the notice was not in itself sufficient, such defect can be supplied later, especially when, as in this case, the company recognized the notice and acted on it by agreeing to send its adjuster. (14 R. C. L. 1351.)

Was the act of the defendant company in promising to send its adjuster such as would excuse the plaintiff from furnishing anything further as to the loss? Appellant is insisting upon plaintiff complying literally with all of his promises, but nothing is said in its brief in exoneration of the defendant company in failing to fulfill its promise to send the adjuster. With such a definite promise what was the duty of the plaintiff—to respect it and patiently wait for his arrival, or on general principles to disregard it and send further information directly to the company? We think the court was justified in giving the instruction that the defendant after such promise cannot now complain about the proof of loss being insufficient.

Appellant insists that the court erred in overruling its demurrer to the evidence of the plaintiff, but it was argued upon the theory

that the evidence as to value was incompetent and that there was no proof of loss. These points having been held against such contention, there was, in our judgment, sufficient evidence to submit the case to the jury. In the same manner, the errors assigned in the giving and refusing to give instructions have been covered and considered above in connection with the matters of reforming the application and the authority of the general agent to bind the company, and need no further comment. Likewise with the reformation of the application being upheld, the argument in favor of judgment for defendant on the special findings cannot be sustained.

Appellant complains of the order of court in the allowance of attorney fee under the statute, which allows in such case "a reasonable sum as an attorney fee" (R. S. 40-228, 40-416), whereas the court heard evidence as to traveling expenses of attorneys, and for attorneys' fees and expenses of attorneys the court fixed and allowed the sum of $750. This is in effect the allowance of but one sum in gross as attorney fee, but intended to cover and include expenses. The statute does not contemplate the allowance of expenses as separate and distinct from the fee, but we see no objection to the witnesses and court considering the time spent and distances traveled in determining the amount of a fee that will be reasonable under such circumstances.

"The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered." (6 C. J. 750. See *Cooper v. Harvey,* 77 Kan. 854, 94 Pac. 213.)

We find no reversible error in the several assignments of error argued, including the overruling of the motion for new trial.

The judgment is affirmed.