*345
 
 ODOM, Justice.
 

 Plaintiff, while at work as a common laborer for the Southern Kraft Corporation at Bastrop, La., fell from an upper story of a building to the ground, a distance of about 20 or 25 feet, and received injuries which he claims have rendered him totally and permanently disabled to do work of a reasonable character, and is therefore unable to earn wages. These injuries were sustained on June 12, 1934. At the time of the injuries, he was insured under a group policy issued by the Metropolitan Life Insurance Company, covering the employees of the Southern Kraft Corporation. This policy contained the following provision:
 

 “The group life policy mentioned on page one of this Certificate provides that the benefits specified below in the case of any Employee who furnishes due proof to the Company that, while insured thereunder and prior to his 60th birthday, he has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any ■ work for compensation or profit.”
 

 And it is also provided in the policy that, “Upon receipt, at the Home Office in the City of New York, of due proof that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit,” the insurance company shall commence to pay such employee a monthly sum stipulated in the table attached to the policy. According to the table, the plaintiff, if injured to the extent alleged, is entitled to 20 monthly installments of $51.04 each.
 

 Plaintiff made proof of his injuries and sent it to the company on May 13, 1936, nearly 2 years after he received the injuries.
 

 The insurance company refused to pay the installments, the refusal being based on three grounds: First, that the proof and notice of injury were not made out and served within a reasonable time; second, that plaintiff was not totally and permanently disabled; and, third, that plaintiff is judicially estopped from now claiming that he was totally and permanently disabled because of his injuries, by judicial allegations to the contrary which he made in another suit.
 

 Plaintiff brought this 'suit to recover the 20 installments and, alleging that defendant had delayed beyond a reasonable time to make the payments, claimed interest, penalties, and attorney’s fees, as provided in act No. 310, page 527, of 1910.
 

 Defendant in answer set up the defenses as stated above and.alleged that, even if it should 'be held that plaintiff was entitled to judgment for the installments claimed, he was not entitled to interest, penalties, and attorney’s fees under the circumstances shown to exist in this particular case.
 

 There was judgment in the district court in favor of the plaintiff for $51.04 each month from June 12, 1934, the date on
 
 *347
 
 which plaintiff was injured, for a period of 20 months, together with 5 per cent, per annum interest on each of said sums from May 13, 1936, until paid. Plaintiff’s demand for penalties and attorney’s fees was re-j ected.
 

 Defendant appealed. Plaintiff answered the appeal, praying that the judgment be so amended as to allow the penalties and attorney’s fees.
 

 The defense set up by the insurance company that plaintiff’s rights under the policy are barred because of his delay in making out and submitting proof of his injuries is without merit. The policy itself specifies no time limit within which these proofs shall be submitted. It merely says that, when the assured submits “due proof” of his injury, the company will begin to pay the installments. Counsel for defendant argue that the term “due proof,” as used in a policy of this kind, refers to the time when the proof is to be submitted and not to the nature of the proof, and they cite numerous authorities holding that under benefit policies such as this one, if no time is specified in the policy within which notice of injury is to be given, the notice must be given within a reasonable time. Their contention is that notice was not given within a reasonable time in this case.
 

 The authorities cited by counsel do not support their contention. They cite 33 Corpus Juris, § 657, page 11. It is there stated that:
 

 “Generally speaking, in order to justify a recovery, insured or the insurance claimant must comply with a lawful stipulation in the policy requiring notice to be given within a specified time, notwithstanding the company is not prejudiced by the delay.”
 

 This refers to policies in which the time for giving notice is prescribed in the policy.
 

 Further on in that section, it is stated that “if no time is fixed by the policy, notice must be given within a reasonable time. What constitutes a reasonable time for giving notice depends on the circumstances of the particular case.”
 

 As we have said, no time was specified in this policy for giving notice of the injury to the company, and we do not think that the delay in this case was so unreasonable as to defeat plaintiff’s right of recovery. The policy does not specify that an injured employee is entitled to benefit merely because he is injured, but the benefit accrues under the policy only in case the insured is totally and permanently disabled from performing- labor of a reasonable character and is rendered unable to earn wages. It is manifestly impossible for the best medical experts to say that a particular injury will result in permanent and total disability. Until it becomes reasonably certain that an injured person will be totally and permanently disabled on account of the injury, he has no right of recovery. Therefore, we think it not-unreasonable for the insured, in a case like this, to await developments before submitting his proofs. The proof which this policy requires the injured person to make is not proof that the injury was sustained, but proof that the injury caused total and permanent disability. Lia
 
 *349
 
 bility under the policy arises only when proof can be made that the insured is permanently and totally disabled.
 

 Counsel cite Carey v. Southern Life & Health Insurance Company, 146 So. 770, and Curry v. Universal Life Insurance Company, 150 So. 408, both decided by the Court of Appeal, Second Circuit. In each' of these cases, the insured was denied recovery. But in each case the policy involved specifically provided that notice of sickness or accident should be given within a specified time. It was held that the policy itself was a contract between the parties and that it was not the function of courts to alter or rewrite policies.
 

 Considering the nature of the injuries sustained by this plaintiff and all the circumstances, we think his right of recovery is not barred by the delay.
 

 The next question is whether plaintiff’s injuries resulted in total and permanent disability. We think the testimony shows that they did. This case was tried more than two years after the injuries were received. The testimony shows conclusively that, from the date of the injuries down to the date of the trial, plaintiff had done no work of any kind. At the time of the trial he was able to walk with the aid of a stick and walked with a limp. He testified that he suffered considerable pain practically, all of the time, and his wife and other lay witnesses testified that he complained of pain in the sacro-lumbar region. The physicians and others testified that he has flat feet. Plaintiff testified that, when he fell a distance of some 20 or 25 feet, he landed on his feet and that he was so badly injured that he had to be assisted by two fellow laborers in leaving the premises. These laborers corroborated his testimony on this point.
 

 The physicians testified that, due to the fall, plaintiff sustained a sacro-lumbar strain which was sufficient to render him unable to do manual labor such as he was employed to do. They all testified that such injuries in some cases produced total and permanent disability; in other cases the patients recover. There was no disagreement between the physicians as to the question whether plaintiff was injured. They all said he was. They did disagree, however, as to the question whether he was rendered totally and permanently disabled to work.
 

 Dr. Poimboeuf testified positively that plaintiff had been under his treatment since the date of his injury and that he was totally disabled and would be permanently so. The physicians called by the defendant insurance company did not see plaintiff until more than two years after he was injured and could not, of course, say whether he had been able to work prior to the date on which they saw him. Drs. Moore and French, both called by defendant, testified that they saw some evidence of disability at the time they examined plaintiff. Dr. Moore examined him under X-ray on November 9, 1936. He said that the only “abnormality” he found was some hypertrophic deposit on the spinal column. He was asked:
 

 
 *351
 
 “Q. Would there be any connection between that and a fall ? A. Not within the scope of a month or two. It might later on.”
 

 He said lie saw nothing on the X-ray plates “that would disable the man. He may have some pain. Those deposits always produce pain on motion or walking.” He said he thought that this hypertrophic deposit on the spinal column was due to an infection “an arthritic condition already present aggravates.” He further said that “an injury usually results in more deposit if the injury is severe” and that the injury “might accelerate the deposit of calcium.”
 

 Dr. French, another physician called by the defendant company, examined plaintiff on two occasions — July 24 and November 9, 1936. He said he found no difference in plaintiff’s condition between the first and the last examinations. He testified that there were evidences of pain in the lumbar region and that the only subjective symptom that he noticed was a slight limp. He said that .a man might become totally and permanently disabled from a sacro-lumbar strain and prevented from performing any work for profit or compensation. As to plaintiff’s present condition, Dr. French said: “I think the man is able to perform practically the same work that he was doing at the time of the accident.” He did not say he could do the same work, but “practically” the same work.
 

 The defendant company called two other physicians, Dr. Howard Sims and Dr. Smith I. Sims, two brothers who are practicing medicine together. These two physicians testified that they had examined this plaintiff “from head to foot,” and the substance of their testimony as to his condition at the time they examined him is that he is 100 per cent, perfect physically and a 100 per cent, malingerer. In this respect their testimony is at variance with that of Dr. Moore and Dr. French, also called by • defendant, each of whom found' some evidence of disability. The Sims brothers did admit, however, that plaintiff did walk with a limp and used a cane.
 

 The testimony of the witnesses, both lay and expert, convinces us, as it did the trial judge, that the injuries which plaintiff received totally and permanently disabled him and that at the time of the trial, more than two years later, he was still unable to do ordinary manual labor, the kind of labor he was doing at the time he was injured, without suffering pain and inconvenience. Plaintiff has been for a long pferiod of time, and still is, unable to perform ordinary manual labor.
 

 In the case of Frey v. Manhattan Life Insurance Company of New York, 182 La. 821, 162 So. 633, 636, we said:
 

 “Where, under a policy which contains provisions for disability benefits like those quoted above, the policyholder makes proof that he is, and has been for a long period of time, totally disabled from bodily disease, the insurer must accept the apparent proofs of the permanency of the disease and make payments accordingly. It must give to the insured the benefit of his disabled condition while it lasts, and not wait until the end of his life to find out whether disability is
 
 *353
 
 permanent. That would deprive the insured of ■ the very benefits which the policy guaranties.”
 

 Their other defense is that plaintiff is now estopped from claiming that he is permanently disabled because he alleged in a former proceeding that he was not in fact so disabled. There is no evidence in the record that plaintiff made such allegations in a former proceeding. It appears that he claimed that his employer, the Southern Kraft Corporation, was due him compensation under the Workmen’s Compensation Act, Act No. 20 of 1914, as amended, for the injuries which he received. The testimony of Miss Mott, a practicing attorney at Bastrop, is to the effect that the attorney who represented the Kraft Corporation called her into his office and asked her to represent plaintiff in a settlement. She says she discussed with plaintiff the nature of his injuries and explained to him that, after making the proposed settlement — she did not in her testimony explain the nature of it — he could not later claim in an action against the Kraft Corporation that he was permanently disabled. We infer from Miss Mott’s testimony that he admitted that he was not permanently disabled. In the course of Miss Mott’s testimony, she said: “As far as he knew at that time he was not permanently disabled and I think I expressed it as being a gamble on his getting well in a reasonable time.”
 

 We infer from Miss Mott’s testimony that such settlement as was made between the Kraft Corporation and this plaintiff was in the nature of a compromise, and the fact that he stated in that interview that he was not permanently disabled does not estop him. There is no evidence in the record as to when that settlement, whatever it was, was made. He may have thought then that he was not permanently disabled. If the settlement was made soon after the injuries were sustained, he could not tell whether his injuries were permanent ot not.
 

 We do not think that penalties provided in Act No. 310 of 1910 should be inflicted in this case. When plaintiff submitted to the company his proofs of total disability, the company immediately consulted its physician, Dr. French, who reported that, in his opinion, plaintiff was not totally and permanently disabled. Subsequently the company had the report of Dr. Moore, who was of the same opinion. In view of these conflicting reports, the defendant’s refusal to pay was not arbitrary or unreasonable. Where there is conflict of opinion between the physicians of an injured person and those called to advise the company, and .the company follows the advice of its own physicians whose reports show that there is no liability, it cannot be said that the company’s refusal to pay and its defense of the suit are unreasonable.
 

 In the recent case of Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52, 55, we said:
 

 “Penalties in civil actions are not favored by the courts and should not be imposed except in cases that are clear and free from doubt.” Citing Massachusetts Protective
 
 *355
 
 Association v. Ferguson, 168 La. 271, 121 So. 863.
 

 For the reasons assigned, the judgment appealed from is affirmed at defendant’s costs.
 

 HIGGINS, J., absent.