Nos. 42,267 and 42,339

WALTER F. WOLF, *Appellee*, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION, *Appellant*.

Nos. 42,268 and 42,338

WALTER F. WOLF, *Appellee*, v. UNITED BENEFIT LIFE INSURANCE COMPANY, *Appellant*.

(366 P. 2d 219)

Opinion filed November 10, 1961.

George B. Powers, of Wichita, argued the cause, and Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris and Gerald Sawatzky, all of Wichita, and William B. McElhenny, of Topeka, were with him on the briefs for the appellants.

Charles S. Fisher, Jr., of Topeka, argued the cause, and O. B. Eidson, Philip H. Lewis, James W. Porter, E. Gene McKinney, Frank C. Sabatini, John High and Roscoe E. Long, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Schroeder, J.: These actions were instituted by the insured plaintiff for the recovery of monthly benefits alleged to be payable under certain health and accident policies issued by the defendant companies. Benefits under these policies were payable in the event of *total and continuous disability resulting from accidental injury.* After commencement of the actions the defendants paid the plaintiff all accrued monthly payments, and the plaintiff stipulated that such payment was in full settlement and agreed to dismiss the actions with prejudice. The issue of whether the defendants were liable for attorneys' fees under G. S. 1959 Supp., 40-256, was reserved for determination by the court. After a hearing on this issue the trial court held the defendants liable for attorneys' fees, from which ruling appeals have been duly perfected by the defendants.

Four appeals have been docketed in this court, all of which have been consolidated by agreement of the parties. For further clarification, No. 42,267 is an appeal by Mutual Benefit Health and Accident Association from the initial adverse judgment of the trial court dated June 15, 1960, and No. 42,339 is Mutual's appeal in the same action from subsequent rulings of the trial court. These separate appeals were taken to avoid the possible argument that a motion for a new trial was unnecessary and therefore would not extend the appeal time.

The same situation is presented concerning the action against

United Benefit Life Insurance Company. This defendant took an appeal from the initial adverse judgment of the trial court dated June 15, 1960, (No. 42,268) and also from the trial court's subsequent rulings (No. 42,338). The two actions in the trial court were consolidated for hearing because the identical issue of the plaintiff's (appellee's) total disability was involved in both cases.

The trial court ordered the defendants (appellants) in both cases to pay $7,500 for an attorneys' fee, and after hearing arguments on the motion for a new trial, allocated $6,000 of the fee against Mutual Benefit Health and Accident Association (appellant in Nos. 42,267 and 42,339), and the remaining $1,500 against United Benefit Life Insurance Company (appellant in Nos. 42,268 and 42,338). Throughout the remainder of this opinion we shall treat these cases as one and refer to the fee allowance as $7,500.

Basically, only two questions are presented: (1) Whether or not the appellee is entitled to recover attorneys' fees from the appellants under the provisions of G. S. 1959 Supp., 40-256; and (2) if the appellee is entitled to recover attorneys' fees, was the allowance for attorneys' fees made by the trial court reasonable? Within these questions others are embraced.

Except for the expert testimony concerning the amount of a reasonable attorney fee, the facts were stipulated by the parties. The appellee, Walter F. Wolf, held several health and accident policies of insurance with the appellants which provided for monthly benefits aggregating $400 per month (prior to reaching age 60 and $325 per month after age 60) in the event of accidental injury resulting in whole and continuous disability. On May 27, 1955, when he was 55 years old, he was severely injured when the tractor which he was driving fell some fifteen to twenty feet from a bridge on top of him, as a result of which he was hospitalized for several months and suffered a whole and continuous disability which all parties agree lasted until July 1, 1958. The appellee was paid $400 per month benefits until July 1, 1958. *On June 27, 1958, the appellee was examined one time by Dr. Harold S. Bowman,* an orthopedic surgeon at Wichita, Kansas, who gave a report which was admitted into evidence.

At this particular time the appellee was under the care of Dr. G. R. Hastings, a general practitioner from Garden City, Kansas, and Dr. H. O. Marsh, orthopedic surgeon of the Wichita Clinic at Wichita, Kansas, and had been under their care since the orig-

inal injury was inflicted. Both Dr. Hastings and Dr. Marsh were at that time, and are now (at the time of trial), of the opinion that the appellee was, and is, suffering from a whole and continuous disability. Both the reports of Dr. Marsh and Dr. Hastings were attached to the agreed statement of facts and admitted into evidence.

On the basis of the report of Dr. Bowman and in the face of the reports of Dr. Hastings and Dr. Marsh, the appellants terminated the payment of monthly benefits to the appellee. The appellee thereafter consulted an attorney in Garden City, Kansas, who for several months attempted to negotiate a settlement of the appellee's claim with the appellants, but being unable to arrive at a satisfactory settlement forwarded the matter to Charles Fisher of Lillard, Eidson, Lewis & Porter of Topeka for handling. This firm accepted employment in accordance with a letter dated July 29, 1959, which reads in part:

"Relative to attorneys' fees, we would be happy to handle this case for you on a basis of a contingent fee of thirty-three and one-third per cent of the gross amount of recovery, less a credit to you of any attorneys' fees allowed by the Court. In other words, the statute allows the recovery of attorneys' fees and if we are successful, these would be applied to the over-all thirty-three and one-third per cent arrangement. If this is satisfactory, please advise, and upon receipt of the information requested above, we will proceed to file suit."

(Objection was made to this exhibit by the appellants on the ground of immateriality, and it was argued at length by counsel that a contingent fee contract was not properly a basis upon which to award attorneys' fees, if owing. The trial court overruled the objection.)

After examining the policies of insurance, conferring with the appellee and reviewing the medical reports, two suits were commenced on November 2, 1959, in the district court of Shawnee County, Kansas. Issues were joined, and the parties, thereafter, agreed the two cases might be consolidated for trial in the fourth division. After a pre-trial conference on the 11th day of January, 1960, the appellants had the appellee examined by Dr. G. Bernard Joyce, an orthopedic surgeon in Topeka, Kansas, whose report was admitted into evidence, and the appellee at his own choice was also examined by Dr. M. E. Pusitz of Topeka, an orthopedic surgeon, whose report was also admitted into evidence.

In preparation for trial Mr. Fisher and Mr. Eidson, of counsel for the appellee, both traveled to Garden City, Kansas, on one

occasion, and Mr. Fisher by himself on another occasion. An interview was had with Dr. Hastings of Garden City and arrangements made for him to come to Topeka for the trial. Various members of the firm of Lillard, Eidson, Lewis & Porter spent approximately fifty-eight hours in preparation of the case for trial. During this time a number of conferences were held with representatives of the appellants which resulted in offers of increasing amounts, the highest of which, for cancellation of all the policies, was $16,000 to settle the appellee's claim under the health and accident policies. By letter. dated March 8, 1960, the appellee through counsel made a firm offer of settlement for a lump sum, which reads in part as follows:

"On the cases currently on file, as we compute it, up until March 1, 1960, we are entitled to recover (assuming we are correct) $7,618.19. Our client has a life expectancy of 13.88 years, and under the various policies he holds, and assuming he lives out his life expectancy, and further assuming that he remains wholly and continuously disabled as that term is defined in the policies, he can expect to recover over his lifetime, an additional $54,132.00. If we discount this amount at the rate of four and one-half per cent, to find out its current worth, i. e., the current value of $54,132.00 payable over a fourteen year period, we find that it has a current worth of $39,869.70. Accordingly, it would appear that if our facts or contentions are right and if Mr. Wolf lives his life expectancy—and no more—his claim has a current value of $47,487.89.

"In our telephone conversation, you requested that we make you a lump sum offer of settlement. This we will attempt to do.

"Our client will settle all claims, past and future, against your companies under the health and accident policies, for the total sum of $30,000.00. This would not mean a cancellation of the life policies, which, of course, we would expect to hold in force.

"It is our view that this proposition of settlement is, after giving you the benefit of every doubt, effecting your companies a net saving of $17,500.00 approximately, plus attorneys' fees. This, we feel, is about the very best that can be done under all of the circumstances."

(Objection was made to the admissibility of this exhibit in evidence on the ground of incompetency and immateriality. The trial court admitted the exhibit for the purpose of showing that negotiations were conducted between the parties, *but not as proof of value of services rendered.*)

The appellants were unwilling to accept the $30,000 offer of the appellee. After several more sessions of negotiations, it was agreed that the pending cases be dismissed upon payment in full to the appellee of all benefits claimed up to date, amounting to $7,513.88. The stipulation for partial settlement and release reads in part:

". . . It is stipulated and agreed by and between the plaintiff and defendant that the payment herein made represents a full, final, and complete settlement of all payments due to said date of March 1, 1960, and that *this cause should be dismissed with prejudice after the determination by the court of the amount of attorneys' fees, if any, due and owing counsel for plaintiff*. It being understood and agreed that this is a full, final, and complete settlement of payments due plaintiff under and from the policy issued by the defendant to the date of March 1, 1960, *but without prejudice to either plaintiff or defendant to claim or deny payments for any future disability as the same may become due or not due under the terms and provisions of the policy*. It is further agreed by the parties that this stipulation and release shall be filed in this action and become a part of the record of the case and have the same force and effect as a stipulation made in open court." (Emphasis added.)

(The stipulation in Nos. 42,267 and 42,339 acknowledged receipt in the amount of $5,785.61 in full, final and complete settlement of all benefits accrued and as a refund of premiums to March 1, 1960; while the stipulation in Nos. 42,268 and 42,338 acknowledged receipt in the amount of $1,728.27 in full, final and complete settlement of all benefits accrued to March 1, 1960, and as a refund of premiums to April 1, 1960.)

The parties agreed that since March 1, 1960, the appellee was paid an additional monthly indemnity or benefit to April 1, 1960, and had been furnished proofs of loss for his claim to May 1, 1960.

Ordinarily the term "costs" and "expenses" as used in a statute are not understood to include attorney fees. At common law the right did not exist to recover attorney fees from one's opponent in litigation as a part of the costs. Therefore, the allowance of attorney fees as part of the costs of an action is dependent upon statutory authority expressly conferring the power to allow them. (*Vonachen v. Pratt Glass Co.*, 172 Kan. 545, 241 P. 2d 775.)

G. S. 1959 Supp., 40-256, reads:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in section 40-201 of the General Statutes of 1949, and including in addition thereto any reciprocal or inter-insurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs: *Provided, however*, That when a tender is made by such insurance company or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

We shall assume the foregoing provisions of the statute are applicable to the decision in the instant case, because the appellants first terminated the payment of monthly benefits to the appellee under the policies on the 1st day of July, 1958. (See, G. S. 1949, 40-256, as it read prior to the laws of 1957.) The causes of action then accrued. The first clause of the statute indicates its application to "all actions hereafter commenced," and these actions were not commenced until the 2nd day of November, 1959. (See, *Light v. St. Paul Fire & Marine Ins. Co.*, 132 Kan. 486, 296 Pac. 701.)

The written stipulation of the parties for partial settlement and release, heretofore quoted in part, specifically reserved for the determination of the trial court a single issue—the amount of the attorneys' fees, *if any*, the appellee's attorneys should be allowed for their services in these cases. The words "if any" in this reservation suggest two defensive approaches for the appellants, both of which they attempt to pursue in this court. Their first position is that the provisions of 40-256, *supra*, have no application as a matter of law where the litigation has been settled on the merits before trial. Their second position is that if 40-256, *supra*, does have application to these cases, the appellants have not refused "without just cause or excuse" to continue full payments to the appellee under the policies.

On the first point the appellants contend the statute does not provide for the allowance of an attorneys' fee in actions settled prior to trial and before judgment. It is argued the parties have reached a mutually satisfactory settlement *on the merits* of the case before the action was tried or any judgment rendered, and that attorneys' fees may be imposed only in those cases which are tried in court and which result in a judgment on the merits adversely to the insurance company. In support thereof they emphasize the words "in which judgment is rendered against any insurance company . . . on any policy," and the provision "if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment . . ." It is argued that only after a full trial on the merits will there be evidence from which the court could have a basis for determining whether or not the insurance company refused without just cause or excuse to pay in accordance with the terms of the policy.

While the appellants concede this court has not directly passed

upon the point, they rely on the dictum in *Light v. St. Paul Fire & Marine Ins. Co.*, supra, and cite *Gold Mine Co. v. Campbell*, 13 Colo. App. 1, 56 Pac. 246; and *Grant County Lumber Co. v. Marley et al.*, 100 Ind. App. 42, 192 N. E. 110.

The foreign cases cited by the appellants are not persuasive. In the *Campbell* case, before attorneys' fees could be allowed under the Colorado foreclosure statute, it was necessary for the plaintiff not only to recover a judgment, but also a decree of foreclosure. The foreclosure decree did not include those claims that were settled before judgment. For other reasons the Colorado statute was held unconstitutional. In the *Marley* case the plaintiff compromised by making a concession on the claim, clearly not the situation here presented.

The appellee contends the word "judgment" as used in the statute includes a judgment for costs or a judgment of dismissal when the action is based on a policy of insurance.

It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history. (*Hunziker v. School District*, 153 Kan. 102, 109 P. 2d 115, and authorities cited therein.)

This court has held when the interpretation of a statute (not penal in nature) according to the exact and literal import of its words would defeat the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason disregarding as far as may be necessary, the strict letter of the law. (*Clark v. Murray*, 141 Kan. 533, 41 P. 2d 1042; and *Higgins v. Cardinal Manufacturing Co.*, 188 Kan. 11, 360 P. 2d 456.)

The appellants assert the statute in question is subject to a strict construction because it has been said the state may *penalize* insurance companies for not making prompt payment of claims which are adjudged to have been meritorious. (*Light v. St. Paul Fire & Marine Ins. Co.*, supra.) From this language the appellants rely upon the rule that penal statutes must be strictly construed, citing *Bagley Investment Co. v. Merrick*, 122 Kan. 734, 253 Pac. 562; and *Brown v. Meyer Sanitary Milk Co.*, 150 Kan. 931, 96 P. 2d 651. These cases, however, dealt with statutes which made the acts denounced a misdemeanor. Strictly and properly, penal statutes

are those laws imposing punishment for an offense committed against the state, and the expression does not include statutes which give a private action against a wrongdoer. (*Huntington v. Attrill*, 146 U. S. 657, 36 L. Ed. 1123, 13 S. Ct. 224.) It must be conceded there is a diversity of opinion in other jurisdictions as to whether statutes, which impose attorneys' fees against insurance companies under certain conditions, are subject to strict construction. As a legal proposition we think it more logical to say these statutes are *compensatory and not penal.* (See, *Hagey v. Mass. Bonding & Ins. Co.*, 169 Or. 132, 126 P. 2d 836, 127 P. 2d 346.)

In *Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 163 P. 2d 389, it was said:

". . . The purpose of the statute allowing an attorney fee in insurance cases is . . . to permit the allowance of a fair and reasonable compensation to the assured's attorney in the event, after having been compelled to sue on his policy, he is successful in that effort. . . ." (pp. 480, 481.)

For a later approval of this statement see *Akins v. Illinois Bankers Life Assurance Co.*, 166 Kan. 648, 656, 203 P. 2d 180.

The trial court in announcing its decision by letter on the 15th day of June, 1960, said:

"The statute in question specifically declares that in *all* actions in which judgment is rendered against any insurance company, if it appear from the evidence that such company has refused without just cause or excuse to pay the full amount of such loss, the Court in rendering such judgment *shall* allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs. The statute contains a proviso to the effect that when a tender is made by such insurance company *before commence-ment of the action* in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed. It appears to the Court that under the express provisions of the statute in order for an insurance company to avoid the payment of a reasonable attorney fee as a part of the costs, it is necessary for the insurance carrier to make a tender *before the commencement of the action.* There is no evidence in this case nor is there any contention that the insurance company tendered the settlement figure *prior* to the time the action was commenced."

Actually, 40-256, *supra,* as punctuated is somewhat ambiguous. Did the legislature intend to say "In all actions hereafter commenced, in which judgment is rendered against an insurance company on a policy of insurance," or did it intend to say "In all actions hereafter commenced on a policy of insurance, in which judgment is rendered against an insurance company? In either case the action must be on a policy of insurance, but if we look to the

statute as it appeared before the change in 1957 (G. S. 1949, 40-256), it becomes apparent the former expression was intended. The emphasis placed on the last proviso by the trial court is unwarranted. In our opinion the proviso does not purport to enlarge the statute but is merely a limitation on the basic part of it.

The legislature was clearly aware of the various types of judgments because it has provided for: Judgment by the court after a full trial (G. S. 1949, 60-3117 to 60-3125); default judgment (G. S. 1949, 60-3109 and see 60-2501 and 60-3803); judgment by confession (G. S. 1949, 60-3110 to 60-3116); judgment on agreed facts (G. S. 1949, 60-2938 to 60-2940); declaratory judgment (G. S. 1949, 60-3127 to 60-3132); and others. Thus, a confession of judgment, among others, by an insurance company would be sufficient to come within the statute as a judgment rendered against an insurance company on a policy of insurance. (See, *Brooks v. National Bank of Topeka,* 153 Kan. 831, 113 P. 2d 1069.)

Contrary to the appellants' contention, the statute (40-256, *supra*) *does not say* the judgment rendered against the insurance company must be *after a trial on the merits.* Nor does it seem to us the legislature intended by the expression "if it appear from the evidence," that a judgment against an insurance company on a policy of insurance be after a trial on the merits. Whether an insurance company has refused without just cause or excuse to pay in accordance with the terms of a policy is an *independent* issue, and evidence produced to determine this issue need not be at a hearing on the merits of the controversy or coincide with evidence produced at such hearing.

Here the written stipulation for partial settlement and release did not terminate the litigation between the parties. By this stipulation the appellants agreed in substance to pay all monthly installments that had accrued under the policies, without any compromise by the appellee whatever. Suit to recover future installments would have to be deferred until future installments became due. This stipulation, however, did not dispose of the litigation. It did not permit the entry of a judgment until *after* the determination by the court of the amount of attorneys' fees, if any, due and owing counsel for the appellee. *After* the determination of the remaining issues *the stipulation was embodied in the judgment.*

Under these facts and circumstances, we hold the submission of the stipulation for partial settlement and release to the trial court

on the trial of the remaining issues was *equivalent to a confession of judgment* (or a judgment by consent) on the policies of insurance, and, within the contemplation of the statute, a judgment entered against an insurance company on a policy of insurance. (See, *Brooks v. National Bank of Topeka,* supra.)

It was only after the actions were filed, at issue, a pre-trial conducted, and ready for trial, that the appellants in the face of all medical reports, recognized their liability on the policies of insurance, and it was only after the parties expressly reserved for trial the remaining issues, that anything was paid to the appellee.

The journal entry recites thè cases were called for trial on the 29th day of April, 1960, and after giving the appearance of the parties and their respective attorneys, it reads:

"Thereupon, the parties announced to the court that pursuant to the written stipulation of the parties on file herein, and the oral stipulation read into the record of the case, the only issue remaining in these cases is the amount of the attorney's fees, if any, plaintiff's attorneys should be allowed for their services in this case.

"Thereupon, plaintiff introduces evidence in his behalf and rests his case; and

"Thereupon, defendants introduce evidence in their behalf and rest their case; and

"Thereupon, the court requests the parties to submit written briefs and takes the case under advisement.

"Now on this 15th day of June, 1960, the court, after having carefully considered the pleadings, the stipulations of the parties, the evidence, including exhibits and testimony offered, and the briefs of the parties, finds:

"That the defendant insurance companies refused, without just cause or excuse, to pay the benefits due the plaintiff under the insurance policies involved in these cases, and the plaintiff is entitled to recover a reasonable sum as attorney's fee as part of the costs in these cases; . . ."

Judgment was thereupon entered dismissing the actions with prejudice and taxing the costs, including a total fee allowance to the appellee's attorneys of $7,500, against the appellants.

The appellants contend they did not withhold payments of insurance to the appellee *without just cause or excuse* by reason of the medical report of Dr. Bowman. This was the issue pursuant to which the medical reports were submitted in evidence by agreement of the parties.

Under the provisions of 40-256, *supra,* only if the insurer refuses "without just cause or excuse" to pay in accordance with the terms of the policy, can it be assessed a reasonable fee for the insured's

attorney. On this point the trial court found against the appellants. Here the facts are stipulated and are not in dispute. In this situation the Supreme Court has as good an opportunity to examine and consider the evidence as the trial court to determine whether or not the appellants had just cause to cease making payments. (*Keeler Co. v. Atchison, T. & S. F. Rly. Co.*, 187 Kan. 125, 354 P. 2d 368.)

Generally speaking, where an insurance company's refusal to pay is based on a reputable physician's certificate and advice, its action in withholding payment is not unreasonable. Usually, this situation is presented where there is a conflict of opinion between the physicians of the insured and those of the insurer. (3 Appleman, Insurance Law and Practice, § 1616, p. 221; *Pearson v. Prudential Ins. Co.*, 214 La. 220, 36 So. 2d 763; *Turner v. Metropolitan Life Ins. Co.*, 189 La. 342, 179 So. 448; and *Link v. New York Life Ins. Co.*, [La. Ct. App.] 194 So. 118.)

Whether there was any reasonable ground for contesting the claim is a matter which depends upon the circumstances existing when the payments are withheld or liability is declined, and not by the fact that payments were ultimately resumed. (*Hanover Fire Insurance Company of N. Y. v. Argo* [5th Cir.], 251 F. 2d 80.)

On the evidence in this case the serious injuries sustained by the appellee were recognized by the appellants who paid substantial benefits for over three years without question. Then upon the report of Dr. Bowman, in which he expressed an opinion that the appellee was no longer totally disabled, further payments under the policies were stopped. Our decision on this point must be determined from the evidence, and it may be noted the written medical reports of Dr. Bowman, Dr. Joyce and Dr. Pusitz are all quite long and detailed, thus giving the basis in fact for their respective opinions or conclusions.

Under the policies in question the appellants were required to pay the monthly indemnity benefits to the appellee in the event of an accidental injury resulting in whole and continuous disability.

Total disability, within the meaning of insurance policies, does not necessarily mean utter helplessness, nor inability to perform any task, or even in some cases, usual tasks for a limited period. It has been said, to hold otherwise would be to penalize every effort of the insured person to rehabilitate himself. (*Hodgson v. Mutual Benefit H. & A. Ass'n*, 153 Kan. 511, 112 P. 2d 121.)

In *Berry v. United States*, 312 U. S. 450, 85 L. Ed. 945, 61 S. Ct.

637, cited with approval in the *Hodgson* case, the United States Supreme Court approved the following definition of total and permanent disability:

"'A total disability is any physical or nervous injury which makes it impossible for a person to follow continuously a substantially gainful occupation at any kind of work for which he was competent or qualified, physically and mentally, or for which he could qualify himself by a reasonable amount of study and training. The word "total" as applied to "disability" does not necessarily mean incapacitated to do any work at all. The word "continuously" means with reasonable regularity. It does not preclude periods of disability which are ordinarily incident to activities of persons in generally sound health, for nearly all persons are at times temporarily incapacited by injuries, or poor health, from carrying on their occupations. If Berry was able to follow a gainful occupation only spasmodically, with frequent interruptions, due to his injuries, and his shock, he was totally disabled. A disability is permanent when it is of such a nature that it is reasonably certain it will continue throughout a person's lifetime.'" (p. 455, footnote 7.)

In *Maresh v. Peoria Life Ins. Co.*, 133 Kan. 191, 299 Pac. 934, an insured farmer brought an action against an insurance company under a policy providing for benefits in the event of total and permanent disability due to bodily injuries or disease which "'must be such as to prevent the insured then and at all times thereafter from performing any work or conducting any business for compensation or profit.'" (p. 192.) The plaintiff was severely injured in a tractor accident at the age of twenty-six years. His common-school education ended with the first year in high school. After that he took a two and a half months' course in business college. He had worked some for neighbors, had worked with a railroad construction company and had never made a living other than by manual labor. In the course of the opinion it was said:

"The subject of what plaintiff is and will be able to do was fully investigated at the trial. It was a fair inference that plaintiff's capacity, so far as his doing work was concerned, was capacity to do manual labor. After he was injured he could do a little manual labor, under special conditions, for short times. There was no substantial evidence that he could perform work for compensation or profit in any department of labor or industry, as workmen are employed to perform work, and as workmen are remunerated for doing work. It was a fair inference that plaintiff's capacity, so far as conducting business was concerned, was capacity to farm. After he was injured he could do a few things about the farm, under special conditions, and for short times. There was no substantial evidence that he could do what is involved in the conduct of farming operations, for profit to himself or to others, or for remunerative compensation." (p. 196.)

Upon instructions described as proper the jury found the plaintiff

totally disabled in his capacity as a farmer, and the judgment of the district court upon the verdict was affirmed on appeal. It was said under the provisions of the policy the evidence authorized the jury to say that, while this man could do a number of things, chiefly petty, he could not work or conduct business for compensation or profit, and would never be able to do so.

In the instant case the undisputed evidence is that the appellee is a one-armed grain farmer who operated a 640-acre grain and stock farm which is partially irrigated. All of the physicians whose reports are in evidence agree that the appellee cannot operate a tractor; that he cannot walk more than two blocks over smooth ground, or at all over rough ground; that he endures substantial pain by reason of his severe injuries, and that his condition is permanent and probably will get worse. Even Dr. Bowman states:

"The complaints which this man has are consistent with his findings on examination."

The only alternative for the appellee to relieve the pain is an operation to "freeze the hip joint," but this is not recommended even by Dr. Bowman because of the extensive arthritis in his spine which would be painfully aggravated if the hip joint were frozen. The following are excerpts from Dr. Bowman's report:

"The lateral view of the lumbar spine shows large spur formations on the 1st, 2nd, 3rd and 4th vertebra.  .  .  .

"Review of the pelvis shows a severe deformity of the acetabulum on the right side with the medial wall of the acetabulum bulging medially and irregularly. There has also been a fracture extending from the roof of the acetabulum up towards the wing of the ilium anteriorly. From this point of the fracture it is about one-half inch higher than on the opposite side, or perhaps slightly less. The protrusion of the head from the fracture of the acetabulum extends medially to the point that the medial portion of the greater trochanter is practically on a level with the acetabulum, and that the superior portion of the greater trochanter is only a half-inch, or slightly less, distal to the lateral border of the acetabulum. There is a considerable roughening of the head of the humerus. The fractures have healed.

.  .  .  .  .  .  .  .  .  .  .

"This man is not totally disabled. He has a farm of some 600 acres which at the present time he is leasing. He is 59 years of age and although he appears to be in excellent health there would of course be some things which he would not be able to do, in the way of hard manual labor. It is felt that this man could operate a grain farm. He would, of course, have difficulty with his tractor in view of the soreness about the hip, also the weakness which is manifested by some gluteal atrophy. He is able to walk several blocks. He no longer has any cows or hogs to take care of since these have been sold. He is completely able to get about the farm and manage his property.

"Mr. Wolf could also work at other occupations which would not require him to be on his feet for long periods of time.

"This man's difficulty, of course, is permanent. It is to be expected that there might be some increase in the difficulty with the use of this hip over a period of time in view of the arthritic component but he might remain more or less as he is over a period of five to ten years. After that, he will undoubtedly be able to get about with the use of a cane which he does not use at the present time.

"Corrective surgery is not indicated and not advisable. If such surgery were performed he very likely could have a result not as good as he now has. In view of the fact that this man gets about as well as he does an arthrodesis, cup operations and prosthesis are not thought to be advisable. There is also the fact to consider that this man has a degenerative condition in his lower lumbar spine which would contraindicate an operation for arthrodesing this hip joint. By removal of motion in the hip joint he would be expected to be comfortable but on the other hand the presence of a degenerative arthritis in the lumbar spine might cause him more difficulty than he presently has."

There is nothing whatever in the record to disclose whether the appellee could work at other occupations which would not require him to be on his feet for long periods of time.

Dr. Joyce said of the appellee's farming ability:

". . . realizing fully that a great deal of heavy labor is required in performing this type of work, it is felt that he cannot fulfill all of the activities required in farming. This would be due both to the disability in the back and in the hip which would eliminate heavy lifting, extensive stooping and bending activities. . . ."

Dr. Pusitz in his report summarized the appellee's disability as follows:

"1. There is a complete and total disability from performing any and all kinds of laboring work, such as farming, or taking care of stock, or taking care of an irrigation system.

"2. In this age group, and with this disability, and with the background that the patient has had as a farmer, it would be a most difficult problem to have the department of vocational rehabilitation train him for any type of work which requires any standing, let alone stooping, bending, lifting and twisting. This brings a serious problem, because it would be the type of case turned down by the department of vocational rehabilitation to enable him to do any type of work.

"3. Even a supervisory position, which requires him to be on rough terrain is out of the question."

On Dr. Bowman's report the trial court concluded, after noting the reports of Dr. Hastings and Dr. Marsh which described the appellee as being totally disabled for farming, and pursuant to which payments had been made to the appellee by the appellants

under the policies for over three years, that the appellants had "at least the obligation to have an examination by another orthopedic physician before determining a change in" the appellee's status. He noted when the appellants did have the appellee examined by another doctor, Dr. Joyce, his inability to carry out farming operations was confirmed.

We think a study of Dr. Bowman's report alone discloses the appellee to have been in such physical condition at the time of examination as to be, in fact, wholly and continuously disabled from farming operations within the meaning of the policies as that term is defined by our Kansas decisions. (*Hodgson v. Mutual Benefit H. & A. Ass'n,* supra; and *Maresh v. Peoria Life Ins. Co.,* supra.) Actually, the specific findings on the appellee's physical condition in the reports of Dr. Bowman, Dr. Joyce and Dr. Pusitz are not materially inconsistent. The only inconsistency is the ultimate conclusion drawn from such findings.

In this case, the fact that it was the appellee's good fortune to own 640 acres of land and to have had years of experience in the operation of this partially irrigated grain and stock farm, which placed him in a position where he could, after selling his cows and hogs, by ingenuity and through the medium of tenant farmers keep the farm in operation and hobble about to collect the rent, is no criterion to determine whether the appellee is totally and continuously disabled within the meaning of the policies. An insured need not be absolutely helpless before he is entitled to the benefits for total and continuous disability. It is only necessary that the disability render him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. (*Pearson v. Prudential Ins. Co.,* supra.)

Under these circumstances we think the trial court properly found the appellants' refusal to pay in accordance with the terms of the policies was "without just cause or excuse." (*Allen v. Hartford Fire Ins. Co.,* 187 Kan. 728, 359 P. 2d 829.)

Was the statutory fee fixed by the trial court excessive and unreasonably high?

Following acceptance of the stipulated facts into evidence various qualified attorneys were called to testify as expert witnesses. Those testifying for the appellee, as to what a reasonable fee allowance would be for the appellee's attorneys, gave amounts ranging from $6,500 to $10,000. Their opinions were based on the proposition

that more had been accomplished than simply recovering $7,-513.88 in cash. They took into consideration all of the facts, *including probable future benefits resulting from the litigation.* Those testifying for the appellants, on the other hand, gave amounts ranging from $1,500 to $1,800. They did not include benefits accruing to the appellee after the termination of the lawsuits, or consider probable future benefits resulting from the litigation.

The appellants argue that the only amounts directly involved in the suit were for benefits accrued to the time of settlement. They point out the issue involved was whether the appellee was partially or totally disabled, and a judgment rendered on that issue could not possibly be binding in regard to the appellee's condition at a future time when the state of his health might improve or he might find employment to his liking. In any event, they argue, no judgment was rendered adjudicating the appellee to be totally disabled, and the settlement entered into in no way prevents the appellants from litigating the issue of the appellee's total disability, whether his condition has changed or not.

In determining a reasonable fee allowance, under a statute giving authorization therefor, the amount involved must always be one of the controlling factors. (*Akins v. Illinois Bankers Life Assurance Co.,* 166 Kan. 648, 203 P. 2d 180.)

There is a conflict of authority over whether amounts not directly involved, but payable in the future, may be properly considered in determining a statutory fee. This jurisdiction has no precedent on the point. Some take the position that since there can be no recovery of installments not yet due, they should not be taken into consideration in measuring attorney fees. (*Pennell v. United Ins. Co.,* [1951] 150 Tex. 541, 243 S. W. 2d 572, and authorities cited therein.) The other view is expressed in *Pacific Mutual Life Ins. Co. v. Jordan,* 190 Ark. 941, 82 S. W. 2d 250, where the court said:

". . . Appellee recovered judgment for $1,550.40, which represented past-due installments, premiums erroneously paid and interest. *The lawsuit also established total and permanent disability, which measures the future rights and liabilities of the parties under this contract or until conditions change. This may or may not aggregate a large sum of money, but at any rate it is a substantial right which should be considered by the court in fixing the attorney's fees.* See *Pacific Mutual Life Ins. Co. v. McCombs,* 188 Ark. 52, 64 S. W. (2d) 52; *Old Colony Life Ins. Co. v. Julian,* 175 Ark. 359, 299 S. W. 366. Moreover, testimony was heard by the trial court in reference to the services rendered and the sum of money considered reasonable for

the services rendered, and the court's award is fully sustained by this testimony. We are unwilling to disturb the trial court's finding on the record made." (pp. 947, 948.) (Emphasis added.)

Other cases applying a similar principle are *American Nat. Ins. Co. v. Jones* (Tex. Civ. App., 1935), 83 S. W. 2d 428; and *Town of Bruce v. Dickey*, 116 Ill. 527, 6 N. E. 435.

In *Lumbermens Mutual Casualty Company v. Klotz* (5th Cir.), 251 F. 2d 499, a Texas statute was involved containing a specific provision requiring the court to take into account " 'all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy.' " (p. 507, footnote 13.) There it was said if the insurer prevailed it would have destroyed a contract having a potential value of many thousands of dollars, but the insured was successful in the action, and "this established a right to payment of substantial sums throughout the next ten years as long as Dr. Klotz remained totally disabled within the terms of the policy." (p. 509.)

In the instant case the over-all effect of this litigation has been to establish the right of the insured to the payment of substantial sums of money throughout his lifetime, so long as he remains wholly and continuously disabled within the terms of the policy. This court is of the opinion, on the facts and circumstances presented by the record herein, that it was proper for the trial court to take into consideration probable future benefits to the appellee as a result of this litigation in fixing the attorneys' fees.

This court has held that in making an allowance of a reasonable sum as an attorney fee in certain insurance cases, authorized by statute, the court in determining the amount thereof may consider labor, time and trouble involved, as well as the extent of services rendered and the nature and importance of the litigation. (*Boberg v. Fitchburg Mutual Fire Ins. Co.*, 127 Kan. 787, 275 Pac. 211.)

The elements that properly enter into the determination of a reasonable attorney fee were quoted in *Wollard v. Peterson*, 145 Kan. 631, 66 P. 2d 375, as follows:

" 'The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance. of the services; the professional character and standing of the

attorney; the results secured; . . .' (6 C. J. 750.) See, also, 5 Am. Jur. 379.)" (p. 636.)

The statute (40-256, *supra*) provides for the allowance of a *reasonable sum* as an attorney fee to be recovered and collected as a part of the costs. It does not contemplate an amount in the nature of a speculative or contingent fee conditioned on winning the case, but only a reasonable fee for the appellee to pay his attorney for prosecuting the case, and the statute does not contemplate a fee for more than one attorney or firm of attorneys. (*Southland Life Ins. Co. v. Norton,* [Tex. Comm. App.] 5 S. W. 2d 767; *Dumas v. King,* [8th Cir.] 157 F. 2d 463; *Business Men's Assur. Co. v. Campbell,* [8th Cir.] 18 F. 2d 223; *Metropolitan Life Ins. Co. v. Leach,* 198 Ark. 531, 129 S. W. 2d 588; *General Life Ins. Co. v. Potter,* [Tex. Civ. App.] 124 S. W. 2d 409; and 6 Appleman, Insurance Law and Practice, § 4039, pp. 511, 512.) In 3 Appleman, Insurance Law and Practice, § 1646, pp. 241, 242, it is stated:

"It is essential, however, that such allowance be a reasonable one. It should never be based on a contingent contract, such as might exist between the claimant and his attorney, but would be a reasonable fee for the services actually performed. . . ."

The appellants contend the trial court's determination of a reasonable fee allowance was influenced primarily by the contingency of compensation—that this factor was given an overriding effect in determining the fee. They rely on a preliminary statement of the trial court in its memorandum to counsel announcing its decision on the post-trial motions which states:

". . . This letter is important because it shows that plaintiff's counsel is handling the case on a 33⅓ percent contingent basis which the Court considers of probative value in determining a reasonable fee in this case. . . .

At this point the trial court was discussing the appellants' contention that it erred in admitting into evidence Exhibit "D," which was the contract letter between Mr. Fisher and the appellee. Later in its memorandum the trial court indicated in determining the value of legal services that it relied upon the guides set forth in *Epp v. Hinton,* 102 Kan. 435, 170 Pac. 987, which it said were in substance the same factors recognized in Canon 12 of the Canons of Professional Ethics adopted by the American Bar Association. (164 Kan. xi, xiv.)

In *Epp v. Hinton,* supra, the court was confronted with an attorney's statutory lien, and its obligation was to "determine the

amount due on said attorney's lien, if any." (G. S. 1915, § 485.) The evidence disclosed no agreement had been made as to the amount of the attorney fee, but there was agreement that no compensation was to be paid except on the contingency of the success of the litigation. Therefore, the court enumerated among the factors to be considered in making a reasonable fee allowance the contingency of the success achieved. Likewise, in general terms the Canons of Professional Ethics include the contingency or the certainty of compensation as one of the permissible factors to be considered by attorneys in determining the value of legal services.

The statute here in question (40-256, *supra*) has uniform operation and the same general considerations should govern in each case arising under it. The personal reasons why one insured may enter into a contingent fee contract should not lead a court into making an award of attorneys' fees by taking such contract into consideration. It would be erroneous, therefore, for the trial court to consider the contingent fee contract for any reason other than to establish the employment of counsel and the purpose for which counsel were employed.

Offers of compromise settlement, made by one of the parties to an action, are not ordinarily admissible against him. (*Kaull v. Blacker*, 107 Kan. 578, 193 Pac. 182; and *Laidler v. Peterson*, 150 Kan. 306, 92 P. 2d 18.) But here the negotiations were not conducted to settle the attorneys' fee issue. The negotiations were conducted in an effort to settle the appellee's claim under the policies. Under these circumstances the foregoing cases have no application. The evidence of negotiations was properly accepted by the trial court to show work and effort on the part of the appellee's counsel in this litigation.

While the trial court should give due consideration to the opinions of the expert witnesses as to the value of legal services, it is not controlled by such evidence, as the trial court itself is an expert on this subject and may apply its own knowledge and professional experience in determining the value of the legal services rendered. (*Epp v. Hinton*, supra, Syl. ¶ 4.)

It has been said the reasonable value of attorney fees under legislative mandate rests largely in the discretion of the trial court, and such allowance will not be reversed on appellate review when supported by competent testimony. (*Groff v. Automobile Owners Safety Ins. Co.*, 180 Kan. 518, 306 P. 2d 130.)

Even if it be assumed upon the record here presented that the trial court gave undue consideration to the contingency of compensation as a factor in determining a reasonable fee allowance, appellate courts, as trial courts, are themselves experts as to the reasonableness of attorneys' fees, and may in the interest of justice fix the fees of counsel when in disagreement with the views of the trial court. (*Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 480, 163 P. 2d 389; and *Akins v. Illinois Bankers Life Assurance Co.*, supra.) Viewing the record here presented in such capacity, this court is of the opinion that a fee allowance *to the appellee* for the services of his attorneys in the sum of $7,500 is reasonable.

Finding no reversible error in the record presented, the judgment of the trial court is affirmed.

SCHROEDER, J., dissenting: I fully concur in the opinion of the court on all points except the allowance of attorneys' fees for *probable future benefits* to the appellee resulting from the litigation.

First, the only recovery permitted by the pleadings, had the actions been fully tried, would be an entry of judgment for $7,513. On this point counsel for the appellee were forced to argue in their brief, in support of their contention that the judgment entered by the trial court against the appellants was within the contemplation of G. S. 1959 Supp., 40-256, that:

". . . The stipulation which is embodied in the judgment, therefore, correctly shows that *the attorneys' services had accomplished all that could be accomplished.* . . ." (Emphasis added.)

Second, a stipulation fairly made between the parties and accepted in evidence should be recognized and enforced equally as to the parties. The obligation imposed upon the appellants by the stipulation for partial settlement and release has been fully recognized in the court's decision, but it specifically provided that it be "*without prejudice* to either plaintiff or defendant to claim or deny payments for any future disability as the same may become due or not due under the terms and provisions of the policy." (Emphasis added.) To make an allowance of attorneys' fees which include "probable future benefits" completely ignores this provision that the agreement was to be *without prejudice* to the appellants as to the appellee's future disability.

Third, the written contract of employment of counsel for the appellee specifically refers to the handling of "*this case*" on the

basis of the *"gross amount of recovery."* Would anyone argue under this contract that counsel for the appellee would be entitled to claim one-third of all future installment payments to the appellee after the lawsuit had been terminated by a final judgment? I think not.

Fourth, the allowance of a reasonable attorneys' fee under 40-256, *supra,* is said not to contemplate an amount in the nature of a speculative or contingent fee conditioned on winning *the case,* but the allowance for probable future benefits completely ignores this mandate and goes one step further. It is not based upon the speculative outcome of a suit pending, but on matters which are not the subject of a cause of action, looking wholly to the future and fraught with more speculation and conjecture than the outcome of a lawsuit. (For example, death would terminate payments.) It must be noted the payments were terminated *without just cause or excuse,* and counsel for the appellee in all probability were not too apprehensive concerning the result of litigation.

It is respectfully submitted the probable future benefits should not have been taken into consideration in fixing a reasonable attorneys' fee allowance. In my opinion, a reasonable fee allowance on the facts and circumstances presented by the record in this case would be $1,800.